# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01422-SCT

*STATE OF MISSISSIPPI, EX REL. JIM HOOD, ATTORNEY
GENERAL AND PHIL BRYANT, AUDITOR OF PUBLIC
ACCOUNTS FOR THE USE AND BENEFIT   OF MADISON
COUNTY, MISSISSIPPI*

*v.*

*MADISON COUNTY, MISSISSIPPI,  ACTING BY AND
THROUGH THE MADISON COUNTY BOARD OF
SUPERVISORS AND HERRING APPRAISAL & COMPUTER
SERVICES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/01/2001 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  MELISSA C. PATTERSON |
| ATTORNEYS FOR APPELLEES: | GLENN GATES TAYLOR |
| | THOMAS A. COOK |
| | G. DEWEY HEMBREE |
| | J. MAX KILPATRICK |
| NATURE OF CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 05/13/2004 |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On June 15, 2001, Madison County, acting by and through its Board of Supervisors (the Board),

filed in the Madison County Circuit Court a Complaint for Declaratory Judgment and Determination of

Rights, naming Herring Appraisal & Computer Services, Inc. (Herring) as the only defendant.  Madison

County asked for a declaration that it had acted in good faith and that its contract with Herring for reappraisal services was valid. The trial court heard arguments on June 18, 2001, and entered a declaratory judgment that the contract was valid. Three days later, the trial court vacated its previous judgment and set the case for a full hearing, finding that certain issues were not known to the court at the time the judgment was entered. On July 3, the State of Mississippi, by and through the Attorney General and the State Auditor, filed a motion to intervene. A full hearing was held on July 6, 2001.

¶2. The trial court determined that Madison County had authority to enter into a contract for appraisal services with Herring without advertising for bids and that the contract between Madison County and Herring was valid. It is from this declaratory judgment and order that the State of Mississippi appeals to this Court, assigning as error the determination that: (1) contracting for appraisal services did not require advertisement for bids and (2) the contract with Herring was a personal service contract.

¶3. Because we hold that Madison County was required to advertise for bids and the contract was a not personal service contract, we reverse and remand.

## FACTS

¶4. In 1980, the Legislature amended several statutes and enacted others in response to public debate over the equalization of property taxes in the state. One of these statutes was Miss. Code Ann. § 27-35-165 (1980), which authorized a county to enter into a contract for reappraisal if the plan for reappraisal or the contract for reappraisal services had been approved by the Mississippi State Tax Commission (Commission).

¶5. As part of the process for statewide reappraisal, the Commission adopted rules governing the maintenance and updates of appraisals. In August of 1997, the Commission instituted changes to its rule

6, entitled "Standards of Acceptance," to set forth standards used by the Commission in determining the acceptability of the real and personal property tax rolls for a county. As a result of these changes, all Mississippi counties were required to reappraise property throughout the county, beginning in 1998. A four-year update program was instituted in order to get all counties to update their tax rolls.

¶6. Rule 6 further stated that if an assessor or board of supervisors preferred to use a contractor to comply with the new rules, then the board or the tax assessor must take full responsibility to ensure that the contractor is complying with all standards and minimum requirements of the Commission.[1]

¶7. In February of 1998, the Commission informed the Madison County Board of Supervisors (the Board) that Madison County's real property tax rolls were not in compliance with the Commission's rule 6 guidelines. The Commission required that Madison County submit a plan for achieving compliance within ninety days. As an incentive to become compliant, the Commission advised that Madison County would lose one mill of assessment funds (approx. $500,000) and the withholding of the county's homestead reimbursement monies (approx. $1,500,000), if it failed to comply. On April 22, 1998, Madison County, through its Tax Assessor, Gerald Barber, submitted a plan to bring Madison County into compliance by June 2001, which the Commission approved as required under Miss. Code Ann. § 27-35-165 (1980). Madison County began implementation of this program and was making progress toward its June 2001 goal.

¶8. Subsequent audits were performed to evaluate how well Madison County was implementing the

---

[1] The Tax Commission also set forth in rule 6 that it would no longer approve individual contracts entered into by counties for reappraisal services, although Miss. Code Ann. § 27-35-165 still required that the Commission approve each county's plan of reappraisal or contract for reappraisal. Mississippi statutes control over rules by administrative agencies.

agreed upon plan, and the audits indicated problems with the reappraisals.[2] In light of these audits, the Commission entered an order dated October 4, 2000, which held that Madison County's Class I and Class II properties[3] were not in compliance with the Commission 's Rule 6 and ordered a new plan to be implemented for Madison County to come into compliance by July 2002.

¶9.	In light of this new plan, Madison County decided to consider firms outside of its own resources to do the reappraisal work and contacted the Commission for a list of companies that perform reappraisal work in Mississippi. The Commission asserts that the purpose of this list, although provided when requested, was not a list of appraisers that it recommended, but a list of appraisers to whom information needed to be sent whenever changes to state property manuals were made. Many of the contractors on this list had not been certified by the Commission under its certification program. In the proceedings below, the trial court found that the Board requested that the Commission provide the Board with a list of firms that provide reappraisal services. The Commission provided that list, and Herring was one of the firms on the list.

¶10.	In October and November of 2000, Madison County negotiated with Herring to perform the remainder of the appraisal work, for an initial figure of $500,000. On November 28, 2000, the Tax Assessor and Herring met to further expound on how much work would need to be done and discuss the cost in a little more detail. The price was approximately $745,000 at this point. The following day Herring faxed a letter to both the Board and to the Tax Assessor stating that the price to complete the job would

---

[2] This was not unusual and was considered typical of the results among the other 81 counties in Mississippi.

[3] Class I property is a single family, owner-occupied dwelling, Class II is all other real estate.

4

be $900,000 plus $60,000 for software for the computer systems.

¶11. On December 5, 2000, the Tax Assessor, concerned with the substantial increase in cost from the beginning estimates, made a counter-offer to Herring for $776,825 and added some detail into the terms. On December 8, 2000, during a phone call with Herring, the Tax Assessor discovered that the Board had already approved the $900,000 proposal, so he prepared a contract with the $900,000 price and finalized the deal. This contract was let to Herring without seeking any proposals or bids from other contractors. The Board did not require Herring to post a bond until July 6, 2001, the date of the circuit court hearing. Herring was not a licensed appraiser.

## STANDARD OF REVIEW

¶12. In *Aikerson v. State*, 274 So.2d 124, 127 (Miss. 1973), this Court said: "It is a general rule in construing statutes this Court will not only interpret the words used, but will consider the purpose and policy which the legislature had in view of enacting the law. The Court will then give effect to the intent of the legislature. *State Highway Comm'n v. Coahoma County*, 203 Miss. 629, 32 So.2d 555, 37 So.2d 287 (1947)."

## ANALYSIS

**I.      Whether the trial court erred in determining that the Board was not required to advertise for bids when contracting for reappraisal services.**

¶13. Determination of the issues now before us turns on the application and interpretation of three statutes pertaining to contracts for land appraisal entered into by the Madison County Board of Supervisors and Herring Appraisal and Computer Services, Inc. The first is Miss Code Ann. § 27-35-101 (Rev. 2002), which authorizes the board of supervisors to order surveys and appraisals of land for the purpose,

5

among others, of taxation. It provides for a thirty (30) day notice by publication and requires that competitive bids be received for the work. The second is Miss. Code Ann. § 27-35-165, which states that "[n]o county shall expend funds for the reappraisal of property unless the plans for reappraisal or the contract for reappraisal is in conformity with the then existing rules and regulations of the state tax commission and has been approved by the state tax commission." It does not make any provision for notice by publication or competitive bids. The third is Miss. Code Ann. § 19-3-69 (Rev. 2003), which authorizes the board of supervisors, "in its discretion, [to] contract with certain professionals when the board determines that such professional services are necessary and in the best interest of the county", and specifically lists licensed appraisers as professionals within the meaning of this statute.

¶14.    The State argues that the contract between Madison County and Herring is illegal and void due to the failure of the Board to publish notice and receive bids pursuant to the requirements of Miss Code Ann. § 27-35-101, which reads, in pertinent part:

> The board of supervisors of any county in this state is hereby authorized in its discretion, to have the cultivatable, uncultivatable, or timbered lands of any owner, or of the entire county or any part thereof, surveyed and the acreage thereof determined and the value of the lands and of any timber, buildings or improvements thereon appraised by a competent person or persons, to be selected by the board of supervisors, the cost thereof to be paid from the general county fund. The board of supervisors of any county is hereby authorized to have the lots and blocks or other tracts in the municipalities of the county surveyed and the area determined, and the valuation thereof and of any buildings, structures, or other improvements thereon, appraised for the purpose of taxation in the same manner and at the same time that lands outside of municipalities are surveyed and appraised. **In case a survey and appraisal is ordered, at least thirty (30) days' notice by publication shall be given and competitive bids received for the work.**

(emphasis added).

¶15. The State cites *Lewis v. Mass Appraisal Services, Inc.*, 396 So.2d 35 (Miss. 1981),[4] asserting that Miss. Code Ann. § 27-35-101 also pertains to reappraisal services and therefore must be followed by the Board. In *Lewis*, taxpayers sued for damages and/or injunction alleging that a county board of supervisors acted unlawfully in letting a contract for reappraisal services, where the county advertised for bids for the reappraisal, but did not advertise for bids for the related data processing. The plaintiffs in the *Lewis* case were held not to have standing to sue, and the case was dismissed. However, the State maintains that this Court recognized that contracts for reappraisal services must be bid according to the statutory requirements of § 27-35-101. What this Court actually noted was that "the board of supervisors appropriated funds for the appraisal of property for the purpose of assessing ad valorem taxes which they are authorized by law to do, § 27-35-101." The Court never reached the substantive question of whether a county must bid its reappraisal. *Lewis*, 396 So.2d at 37.

¶16. Alternatively, the State argues that even if the Board was not required to follow the mandates of § 27-35-101, it failed to comply with the very statutory provisions that it now argues apply when the board failed to submit its new plan of hiring a contractor to complete the appraisal work, as required by the Tax Commission's Rule 6 and Miss. Code Ann. § 27-35-165. The State also notes that Madison County did not require Herring to post a bond as required by § 27-35-165, until after the July 6, 2001, hearing in this matter. The State (ex rel. Attorney General Jim Hood and Auditor Phil Bryant, the two officials charged with the application and enforcement of such statutes) further asserts that this Court should order the trial court to make a determination as to any monies due to Herring as payment for services rendered under a

---

[4] Abrogated by *Canton Farm Equipment, Inc. v. Richardson*, 501 So.2d 1098 (Miss. 1987) on the issue of whether the complaint must state that the public is invited to join in such a lawsuit.

quantum meruit basis. However, the State fails to cite any authority to support this request; therefore, we decline to address the request. This matter should be addressed by the trial court on remand.

¶17.    Madison County responds that, in this particular situation, Miss. Code Ann. § 27-35-101 does not apply and that it was not required to seek competitive bids. Instead, it asserts, Miss. Code Ann. § 27-35-165 is the applicable statute where the appraisal (or reappraisal) was ordered by the Tax Commission. Miss. Code Ann. § 27-35-165 reads, in pertinent part:

> **No county shall expend funds for the reappraisal of property unless the plans for reappraisal or the contract for reappraisal is in conformity with the then existing rules and regulations of the state tax commission and has been approved by the state tax commission.** Such reappraisal may be accomplished by (a) contracting with private firms for performance of the work; (b) hiring private consultants to perform certain functions of the work along with overseeing the balance of the work which shall be performed by county employees trained by the consultant; or (c) employing, schooling and training county employees to perform all of the work under the supervision of the tax assessor. **All contracts made pursuant to item (a) above shall require that the contractor furnish a payment and performance bond in an amount not less than one hundred percent (100%) of the contract price, which bond shall be conditioned, in part, to guarantee successful completion of the contract and may be conditioned upon payment of the cost of defense of any suits which may be brought against the county, the board of supervisors or the assessor arising out of such reappraisal for a period of one (1) year after completion thereof.**

(emphasis added).

¶18.    Madison County contends that it had the authority to enter into the contract with Herring pursuant to Miss. Code Ann. §§ 27-35-165 and 19-3-69 without advertising for bids. It asserts that neither statute is ambiguous, each authorizes the board to contract for the type of work at issue and neither incorporates an advertising-for-bids requirement. Madison County maintains that the Legislature, in enacting §§ 27-35-165 and 19-3-69, provided means other than advertising for bids to protect the public interest and the

Legislature chose not to require advertising for bids for contracts entered into under those statutes. It further contends that § 27-35-101 does not apply to the type of work at issue (appraisal update work), but applies only if the Board makes a *discretionary* decision to order a *survey and appraisal* of county lands.

¶19.    Because this case involves interpretation of statutes with very little case law to guide us, we look to the rules of statutory construction, and based on those rules we find Madison County's arguments unconvincing. The most fundamental rule of statutory construction is the plain meaning rule, which provides that if a statute is not ambiguous, then this Court must apply the statute according to its terms. *City of Natchez v. Sullivan,* 612 So.2d 1087, 1089 (Miss. 1992). Another related rule is the doctrine of in pari materia, which provides that if a statute is ambiguous, then this Court must resolve the ambiguity by applying the statute consistently with other statutes dealing with the same or similar subject matter. *James v. State,* 731 So.2d 1135, 1138 (Miss. 1999).

¶20.    When the county board of supervisors orders an appraisal of real property for taxation purposes, Miss. Code Ann. § 27-35-101 provides the manner in which the contract is let and provides for a thirty (30) day notice by publication for competitive bids. Miss. Code Ann. § 27-35-165 provides that no county shall expend funds for property appraisal updates unless the contract for appraisal or plans for appraisal are in conformity with the rules and regulations of the State Tax Commission. Miss. Code Ann. § 19-3-69 provides that the board of supervisors may enter into a contract for professional services and lists appraisers as a profession within the meaning of that section.

¶21.    These statutes unquestionably pertain to the same subject matter and must be read together. On

9

their faces, the statutes are not ambiguous, but clearly set out provisions for conducting and/or contracting for appraisal of real property. The provisions of § 27-35-165 and § 19-3-69 do not operate *instead of* the provisions of § 27-35-101, but in addition to those provisions.

¶22. A third rule of statutory construction is that a specific statute controls over a general statute. *Miss. Gaming Comm'n v. Imperial Palace of Miss., Inc.*, 751 So.2d 1025, 1028 (Miss. 1999); *Lenoir v. Madison County*, 641 So.2d 1124, 1127 (Miss. 1994); *Townsend v. Estate of Gilbert*, 616 So.2d 333, 335 (Miss. 1993); *Benoit v. United Cos. Mortg. of Miss., Inc.*, 504 So.2d 196, 198 (Miss. 1987). This rule applies only when statutes are irreconcilably inconsistent. *Miss. Gaming Comm'n v. Imperial Palace of Miss., Inc.*, 751 So.2d at 1028 (citations omitted). We find that the subject statutes are not irreconcilably inconsistent.

¶23. In the instant case, § 27-35-101 is the oldest and more general of the statutes at issue, authorizing surveys and appraisals of land, whereas § 27-35-165 pertains specifically to reappraisal for property or appraisal updates. Furthermore, long-standing case law indicates that where a statute provides for public work to be done but does not provide the manner for advertising for such work, the statute has the effect of adopting the general statute on the subject of advertising for bids for letting of those contracts. *Board of Supervisors of Hancock County v. Cooper*, 147 Miss. 57, 112 So. 682, 684 (1927), citing *Swayne v. City of Hattiesburg*, 147 Miss. 244, 111 So. 818 (1927), *aff'd per curiam*, 276 U.S. 599, 48 S.Ct. 320, 72 L. Ed. 2d 724 (1928).

¶24. Based on our analysis of the applicable statutes, we hold that Madison County was required to comply with the advertising-for-bids provisions of § 27-35-101 for its reappraisal work, and the trial court

10

erred in finding otherwise.

## II. Whether the trial court erred in determining that the contract was valid as a personal service contract.

¶25. Miss. Code Ann. § 19-3-69 lists certain professionals with whom the board of supervisors may contract for services. The State argues that the trial court erred in determining that the contract was valid as a personal service contract because Herring is not a licensed appraiser. Miss. Code Ann. § 19-3-69, states, in pertinent part:

> The board of supervisors of each county may, in its discretion, contract with certain professionals when the board determines that such professional services are necessary and in the best interest of the county...
> **A professional within the meaning of this section shall be limited to**:
> **(f) Appraisers, licensed by the Mississippi Real Estate Commission or as otherwise provided by law;**

(emphasis added).

¶26. The State points out that this statute clearly causes the contract at hand to be invalid, as neither Herring nor his employees are licensed as the statute requires.

¶27. Madison County points to § 19-3-69 as support for the argument that, in this particular situation, it was authorized to enter into a contract with Herring, at the Board's discretion. It further asserts that Herring and his employees do not have to be licensed and are protected by Miss. Code Ann. § 73-34-5(3) (Rev. 2000) which provides that licensing provisions do not apply to any state, county, or municipal public officers or their salaried employees while performing their duties as such. The Board contends that the county deputized all the employees who were performing the work and that, therefore, those employees were exempt for any licensing requirements.

¶28. We do not agree. Miss. Code Ann. § 19-3-69(f) clearly establishes that appraisers with whom

11

the county contracts for personal services must be licensed by the Mississippi Real Estate Commission or as otherwise provided by law, and Herring and his employees are not licensed by the Real Estate Commission or any other licensing body. Furthermore, Miss. Code Ann. § 73-34-5(3) refers to salaried employees of the county, and the contract between the county and Herring clearly requires that Herring and his employees remain employees of Herring; and therefore, they are not "salaried" employees of Madison County.

## CONCLUSION

¶29.    We hold that Miss. Code Ann. § 27-35-101 requires a county to advertise for bids for reappraisal services and must be read together with Miss. Code Ann. §§ 27-35-165 and 19-3-69. Furthermore, the trial court erred in determining that the contract was a valid personal services contract such that it was exempt from the advertisement-for-bids requirement. The circuit court's judgment is reversed, and this case is remanded for further proceedings in the trial court consistent with this opinion.

¶30.    **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**