CARLTON, J„ for the Court:
¶ 1. In April 2003, raw sewage flooded the homes of Flynn and Kathleen Wallace and James and Linda Fortenbei-ry[1] due to *1213 blockage in the City of Jackson’s (City) sewage lines. The Appellants sued the City for damages. In response, the City moved for summary judgment, which the circuit court granted. The Appellants now timely appeal. We reverse the circuit court’s entry of summary judgments in favor of the City and remand the cases for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 2. In the 1960s, a developer built the subdivision where the Appellants’ homes flooded with sewage. The developer installed six-inch clay drainage pipes in the subdivision sewage system. In 1971, the City annexed the Wallaces’ property. In 1977, the City passed its 1977 Subdivision Ordinance, which mandated, among other required criteria, that sewage pipes comply with minimum-design standards, in that the pipes must measure at least eight inches in diameter. Mississippi Code Annotated section 21 — 27—189(b) (Rev.2007) authorizes the City to pass such ordinances to ensure that sewage operations comply with the metropolitan area plan and federal law. The City’s engineer provided that these minimum-design standards in the ordinance were current and that the six-inch pipes installed in the Appellants’ subdivision were not compliant with the ordinance.
¶ 3. The Appellants assert that on April 6, 2003, as a result of the City’s breach of its duty to repair and maintain the municipal sewage system, raw sewage flooded the Fortenberrys’ home to a depth of approximately six to eight inches. On April 24, 2003, raw sewage again flooded the Fortenberrys’ home. Also, on April 24, 2003, raw sewage flooded the Wallaces’ home. A blockage in the City’s sewer line that serviced the Appellants’ homes caused all three sewage floods. The Appellants stated in their complaints that experts advised them to immediately evacuate their homes because of the health hazards of living in a home contaminated with raw sewage.
¶ 4. David Willis, the City’s designee, stated in his deposition testimony that: “The City should operate [its] [sewerage] system to minimize health risks to the customer or the environment.” Willis also testified about the City’s 1977 Subdivision Ordinance, stating that “[s]ince 1977, the City adopted minimum-design standards in [its] subdivision ordinance that requires or sets out some allowance for infiltration and inflow [in the City’s sewer lines] ...” Willis acknowledged that the pipes servicing the Appellants’ homes “[did] not meet the current design standards that were adopted in 1977.”
¶ 5. After sewage flooded the Appellants’ homes, they gave notice of claim to the City regarding damages. In response, the City denied the Appellants’ claims. The Appellants filed suit. In turn, the City moved for summary judgment alleging that the City possessed discretion in determining whether to provide the resources necessary for the construction, maintenance, or repair of sewer lines within its jurisdiction. Additionally, the City contended that it possessed immunity from liability pursuant to the Mississippi Tort Claims Act (MTCA).
¶ 6. The circuit court granted the City’s motion for summary judgment, but the Court considered only a portion of section 21-27-189(b) in its ruling. In finding discretionary immunity, the circuit judge stated the following:
*1214 The [Legislature granted the City the authority to construct, operate and maintain [sewerage] systems pursuant to section 21-27-189[b] which states:
A municipality, as defined in section 21-27-168, is authorized and empowered, in the discretion of its governmental authorities, to exercise the following powers and authority within the area and territories comprising the metropolitan area of which it is a part:
(b) To construct, operate and maintain sewerage systems ...
This statute was enacted prior to the MTCA. However, its plain language gives the governmental authorities the power to maintain their [sewerage] systems using their discretion.
(Ellipsis in original). We note that the remainder of the above-stated statute was absent from the circuit court’s opinion.
STANDARD OF REVIEW
¶ 7. For a summary judgment motion to be properly granted, the court must determine that no genuine issue of material fact exists and that the moving party must be entitled to a judgment as a matter of law. M.R.C.P. 56(c). “The moving party has the burden of demonstrating that no genuine issue of material fact[ ] exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.” Howard v. City of Biloxi, 943 So.2d 751, 754 (¶ 4) (Miss.Ct.App. 2006). We apply a de novo standard of review to a trial court’s grant of summary judgment. Moss v. Batesville Casket Co., 935 So.2d 393, 398 (¶ 15) (Miss.2006).
WHETHER THE CITY WAS IMMUNE FROM SUIT PURSUANT TO SECTION ll-46-9(l)(d)
¶8. The City argues on appeal that maintenance of the City’s sewerage system is discretionary in nature; therefore, the City enjoys immunity from suit pursuant to Mississippi Code Annotated section ll-46-9(l)(d) (Supp.2009). The Appellants, however, argue that the challenged conduct in this case is ministerial in nature; thus, it is not subject to the discretionary-function exception as set forth in section ll-46-9(l)(d).
¶ 9. The MTCA authorizes suits against the State and its political subdivisions for damages “arising out of the torts of such governmental entities and the torts of their employees while acting within the scope of their employment....” Miss.Code Ann. § 11-46-5(1) (Rev.2002). However, the MTCA provides enumerated exceptions to the State’s waiver of immunity.
¶ 10. The exception relied upon by the circuit court and the City in this case falls under the discretionary-function exemption, which is found in section 11^6-9(l)(d) and enunciates that neither the State nor its employees are liable for any claim based upon the performance or the failure to perform a discretionary function, “whether or not the discretion be abused.”
¶ 11. “In determining whether governmental conduct is discretionary[,] the Court must answer two questions: (1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives.” Dancy v. E. Miss. State Hosp., 944 So.2d 10, 16 (¶ 18) (Miss.2006) (citation omitted). The Court has explained the difference between discretionary and ministerial duties in the following manner:
A duty is discretionary if the government actor is required to exercise his or her judgment or discretion in performing the duty. Dancy v. East Miss. State Hosp., 944 So.2d 10, 17-18 (¶ 19) (Miss.2006) [ (citation omitted) ]. On the other hand, “a duty is ministerial and not discretionary if it is imposed by law and its *1215 performance is not dependent on the employee’s judgment.” Mississippi Dep’t of Transp. v. Cargile, 847 So.2d 258, 267 (¶ 85) (Miss.2003) [(citation omitted) ]. The United States Supreme Court has explained that “the requirement of judgment or choice is not satisfied if a ‘federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,’ because ‘the employee has no rightful option but to adhere to the directive.’ ” United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 ... (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 ... (1988)).
Miss. Dep’t of Human Servs. v. S.W., 974 So.2d 253, 258 (¶ 11) (Miss.Ct.App.2007).
¶ 12. Our inquiry, thus, turns on whether the City’s duty to maintain the City’s sewerage system required the City to exercise policy-based judgment, or whether the City was instead bound to perform its duties in accordance with mandatory directives imposed by law, policy, or regulation. See id.
¶ 13. Because the circuit court based its ruling upon a partial analysis of section 21-27-189(b) in finding that the duty to maintain the sewerage system constituted a discretionary function, we must construe the plain language of the statute that forms the basis of the circuit court’s opinion. In so doing, we borrow basic principles of statutory construction, which we find very useful to our analysis. First, “[t]he primary rule of construction is to ascertain the intent of the [L]egislature from the statute as a whole and from the language used therein.” MIC Life Ins. Co. v. Hicks, 825 So.2d 616, 621 (¶ 12) (Miss.2002). If ambiguity is found, we resolve the meaning of the ambiguous statute by applying the statute consistently with other statutes addressing the same or similar subject matter. State ex rel. Hood v. Madison County ex rel. Madison County Bd. Of Supervisors, 873 So.2d 85, 90 (¶ 19) (Miss.2004). If statutes are irreconcilably inconsistent, a specific statute controls over a general statute. Id. at 91 (¶ 22). With these rules of statutory interpretation to guide us, we now examine the statute at issue and the City’s various duties.
¶ 14. As stated, we must begin by reviewing the statute partially considered by the circuit judge. Mississippi Code Annotated section 21-27-161 (Rev.2007) of the Metropolitan Area Waste Disposal Act authorizes the City to provide for the safe transportation of sewage “in order to prevent and control the pollution of the waters in this state.” Additionally, section 21-27-189, which the Legislature enacted in 1975, provides that a municipality is authorized to exercise various powers and authorities within its metropolitan area. In the present case, the circuit court based its grant of summary judgment upon a partial reading of section 21-27-189(b). However, we find that this case requires a reading of section 21-27-189 in its entirety, as well as the related statutes that provide definitions to the terms set forth in section 21-27-189. Section 21-27-189 states the following:
A municipality, as defined in [s]ection 21-27-163, is authorized and empowered, in the discretion of its governmental authorities, to exercise the following powers and authority within the area and territories comprising the metropolitan area of which it is a part:
(a) To operate and manage sewerage systems, sewage treatment facilities and sewage disposal systems and related facilities serving the metropolitan area in conformance with the metropolitan area plan.
(b) To construct, operate and maintain sewerage systems, sewage treat *1216 ment facilities and sewage disposal systems in the manner and to the extent required by the metropolitan area plan.
(c) To accept and utilize grants and other funds from any source for waste treatment management purposes.
(d) To establish and maintain rates and charges for the use of the services of such sewerage systems, sewage treatment facilities and sewage disposal systems within the metropolitan area, and from time to time to adjust such rates, to the end that the revenues therefrom will be sufficient at all times to pay the expenses of operating and maintaining such works, facilities and systems and all of the municipality’s obligations under any contract or bond resolution with respect thereto.
(e) To incur short and long-term indebtedness under the provisions of [sjections 21-27-161 through 21-27-191 or other applicable statutes.
(f) To adopt rules and regulations necessary to carry out the implementation of the metropolitan area plan and to assure the payment of each participating person or public agency of its proportionate share of treatment costs.
(g) To refuse to receive any waste from any public agency or subdivision thereof or any other person which does not comply with the provisions of the metropolitan area plan applicable to the particular area within which such public agency or subdivision thereof or any other person is located.
(h) To accept industrial waste for treatment and to require the pretreatment of same when within the opinion of the municipality such pretreatment is necessary.

(i) To adopt all necessary and reasonable rules and regulations to carry out and effectuate any waste treatment plan adapted for the metropolitan area.

(j)To require by ordinance or by contract with a public agency or other person that all waste within the metropolitan area be disposed of through sewerage systems, treatment facilities and sewage disposal systems which comprise a part of the metropolitan area plan, to the extent that the same may be available, but no public agency shall be precluded from constructing, operating and maintaining its own sewerage system if the same be a part of the metropolitan area plan.
(Emphasis added).
¶ 15. Then, Mississippi Code Annotated section 21-27-163(m) (Rev.2007) addresses the same subject matter and defines the metropolitan area plan as “a comprehensive plan for water quality management and the control and abatement of pollution within the metropolitan area, consistent with applicable water quality standards established pursuant to the Federal Water Pollution Control Act.” (Emphasis added). Hence, in reading the two statutes together, if the City chooses to exercise the authority granted by the Legislature to operate and maintain a municipal sewage system, then the City must do so in a manner consistent with the water-quality standards established by the Federal Water Pollution Control Act (The Act),[2] in accordance with its metropolitan-area plan, and with any rules and regulations adopted by the City itself.
¶ 16. In reading section 21-27-189 as a whole, we turn to subsection (i) of section 21-27-189, which was not evaluated by the circuit court. This subsection states that the City is authorized “[t]o adopt all necessary and reasonable rules and regulations *1217 to carry out and effectuate any waste treatment plan adopted for the metropolitan area” to ensure compliance with the metropolitan-area plan. Miss.Code Ann. § 21-27-189®. Legislative history reflects that the Legislature adopted section 21-27-189 in 1975. Then, in 1977, the duly-elected City Council of Jackson outlined in detail the mandatory-design standards for the City’s sanitary sewage system in its 1977 Subdivision Ordinance to ensure compliance with the federal water-quality standards. In doing so, the City exercised the executive authority provided in section 21-27-189®. In accordance with the testimony of David Willis, an engineer and the City’s Mississippi Rule of Civil Procedure 30(b)(6) deposition witness, the ordinance relevant to this case provides for minimum-design standards of the sanitary sewer system for each subdivision and requires a minimum pipe size of eight inches. By virtue of this municipal ordinance, the City imposed upon itself a mandatory duty to ensure that all pipes conform to the eight-inch requirement. According to Willis, this minimum-design standard allows for sufficient capacity for sewage flow.
¶ 17. When the circuit court granted the City’s motion for summary judgment based on section 21-27-189(b), the circuit court analyzed only a portion of that section, failing to consider the impact of section 21-27-189 as a whole as applied to the facts in this case. Again, the circuit court in its opinion granting summary judgment quoted section 21-27-189(b) in the following manner verbatim:
A municipality, as defined in section 21-27-163, is authorized and empowered, in the discretion of its governmental authorities, to exercise the following powers and authority within the area and territories comprising the metropolitan area of which it is a part:
(b) To construct, operate and maintain sewerage systems ...
(Ellipsis in original).
¶ 18. We find that the circuit court erred in its interpretation and application of only a portion of section 21-27-189(b) and in failing to apply the related statutes referred to in the text of section 21-27-189. Additionally, the court also erred in ignoring the City’s requirement to abide by the Act when it granted the City’s motion for summary judgment. An analysis of section 21-27-189(b) provides that if a municipality exercises the enumerated powers and authority outlined by the statute, the exercise of such power, i.e., to construct, operate, and maintain the sewerage system, must be done in a manner consistent with the metropolitan area plan. However, a municipality possesses the discretion under this statute as to whether or not it wants to run its own sewage system. Sewage operations could be run by the private sector. If the municipality chooses to exercise this authority, compliance with the applicable water-quality and pollution-control laws is required to protect the public health and water quality. Section 21-27-163(m) clearly defines the term “metropolitan area plan” and provides that such a plan must be consistent with applicable water-quality standards established pursuant to the Act.
¶ 19.' Moreover, section 21-27-189® states that the City can adopt all necessary and reasonable rules and regulations to carry out and effectuate any waste-treatment plan adopted for the metropolitan-area plan and any rules and regulations the City adopts to carry out this plan. In this case, the City exercised such authority by adoption of an ordinance ministerial in nature. Again, the circuit court failed to consider the entirety of section 21-27-189 as well as the impact of the City’s 1977 *1218 Subdivision Ordinance. The City’s 1977 Subdivision Ordinance sets forth a ministerial duty in that all sewage pipes must comply with minimum-design standards in that they must measure at least eight inches in diameter. Such a requirement eliminates the element of choice or judgment by city employees. Therefore, no rightful option but adherence to the requirements existed.
¶ 20. In turning again to the facts of the case, the City’s sewer lines servicing the Appellants’ property only measure six-inches in diameter. The City’s designee, Willis, in his Rule 30(b)(6) deposition testimony, testified that the City’s 1977 Subdivision Ordinance sets forth current minimum-design standards for sewage pipes and stated that the pipes servicing the Appellants’ homes “[did] not meet the current design standards that were adopted in 1977.”
¶ 21. In this case, as stated, the plain language of the statutory grant of authority necessarily entailed compliance with the metropolitan-area plan, federal law, and any city rules and regulations enacted to ensure compliance with the metropolitan-area plan. In the exercise of this statutory authority to adopt rules and regulations locally, the City adopted its own minimum standards as provided in the 1977 Subdivision Ordinance that set forth no discretion or choice as to minimum-design standards, stating that the sewerage system pipes shall conform to a minimum pipe size of eight inches.
¶ 22. Curiously, at oral argument, the City argued that any adverse decision by this Court or other external regulation regarding the operation and maintenance of the City’s operation of the municipal sewage system would violate the municipal board executive authority and hence would violate the separation of powers. The City’s assertions at oral argument ignored the existence or obligation to comply with its own 1977 Subdivision Ordinance, as well as any preempting federal or controlling state law. Before 1972, the City’s argument might have been plausible.[3] However, we note that federal law controls when addressing the discharge of pollutants that affect our nation’s waters. 33 U.S.C. § 1251 et seq. (2006). Further, sewage is defined by the Act as a pollutant, thus drawing the City’s sewage systems under the Act’s regulations. 33 U.S.C. § 1362(6) (2006).
¶ 23. Even though the Act and pollution-permit requirements apply to discharge of sewage, this Court need not turn to the controlling federal environmental-water-quality law to find the existence of a material question of fact as to whether a breach of ministerial duty occurred by the City sufficient to survive a motion for summary judgment. The City adopted the Subdivision Ordinance in 1977, imposing standards upon itself with respect to the appropriate minimum size of sewage pipes; no outside legislative body or judiciary imposed that ordinance upon the City. The City’s own engineer asserted the existence of this minimum-design standard, thereby establishing sufficient evidence to create a question of material fact as to whether the City breached a ministerial duty. State statutory law exists authorizing municipalities that operate sewage systems to adopt all necessary and reasonable rules and regulations needed to carry out its waste-water-treatment plan, and this plan in accordance with state statute, must comply with the Act and permitting standards. Nonetheless, the City’s argument that only the City can impose regulations upon its *1219 sewage operations fails to acknowledge the application of the Act to our nation’s waters, water quality, sewage discharge, and municipal-sewage operations. Our well-established standard of review provides that we review the grant of summary judgment de novo. Moss, 935 So.2d at 398 (¶ 15). Consequentially, while we are confined to the facts set forth in the record, this Court may consider controlling legal authority not contained in the record when reviewing a case de novo.
¶ 24. We are reminded that Rule 3.3 of the Mississippi Rules of Professional Conduct requires that counsel disclose to the tribunal any legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel. The record in this case fails to reflect the applicable portions of the federal Act or to discuss the status of the City’s compliance with municipal-sewage-permitting standards.
¶ 25. At oral argument, in asserting a separation-of-powers argument, the City maintained that they retained sole regulatory authority over the City’s discharge of sewage and municipal-sewage operations. However, our research reflects that the Act applies to the discharge of sewage and municipal-sewage operations. 33 U.S.C. § 1251 (2006) et seq.; Nat’l Cotton Council of Am. v. U.S. Envtl. Prot. Agency, 553 F.3d 927, 929 (6th Cir.2009). Historically speaking, case law reflects that after continuous pollution of our nation’s waters, Congress recognized that the discharge of pollutants affects public health and the quality of our water sources and, therefore, created the Act “to restore and maintain the chemical, physical and biological integrity of the [njation’s waters.” Nat’l Cotton Council, 553 F.3d at 930. The goal of the Act is to achieve better water quality, “which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water.” Id.
¶ 26. In order to achieve this goal, the Act provides that the discharge of any pollutant by any person shall be unlawful. 33 U.S.C. § 1311(a) (2006). As noted above, pollutant is a statutorily-defined term that includes sewage. 33 U.S.C. § 1362(6). The United States Supreme Court has held that this list is not exhaustive, and that the term pollutant should be interpreted broadly. Nat’l Cotton Council, 553 F.3d at 930 (citing Rapanos v. United States, 547 U.S. 715, 724, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006)).
¶ 27. Knowledge of applicable municipal-sewage-permit requirements and regulations implementing the Act would assist the Court to understand the scope and breadth of the regulatory requirements and pollution-permit requirements pertaining and applicable to the City’s sewage operations. However, such knowledge is superfluous to the resolution of the issues at hand. A genuine issue of material fact exists in this case as to whether the City violated a ministerial duty that the record reflects the City articulated and imposed on itself in the 1977 Subdivision Ordinance as to minimum-design standards and sewage pipe size. Accordingly, we reverse and remand.
¶ 28. Therefore, for the above reasons, we find that the record reflects evidence that the City breached a ministerial duty set forth in its own 1977 Subdivision Ordinance which contained no element of choice. Evidence may show that the municipal-sewage operations may have also violated other requirements, including ministerial requirements, imposed by the Act, state law, and municipal-sewage-permitting standards. To this extent, a question of material fact exists as to whether the City breached a ministerial duty, and as a result, the discretionary-function ex *1220 emption does not bar a claim against the City. Therefore, we find that the circuit court erred in granting the summary judgments in favor of the City. Accordingly, we reverse the summary judgments in favor of the City and remand the cases to the circuit court for further proceedings consistent with this opinion.
¶ 29. THE JUDGMENTS OF THE HINDS COUNTY CIRCUIT COURT ARE REVERSED, AND THESE CASES ARE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THESE APPEALS ARE ASSESSED TO THE APPELLEES.
LEE AND MYERS, P JJ., GRIFFIS AND ISHEE, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, BARNES AND ROBERTS, JJ. MAXWELL, J., NOT PARTICIPATING.

. Because we have consolidated the Wallace and Fortenberry cases, for the sake of clarity, *1213 we generally will refer to both the Wallaces and the Fortenberrys as the "Appellants” throughout this opinion.

. This Act is commonly referred to as the Clean Water Act.

. The version of the Federal Water Pollution Control Act currently in effect is based on the Federal Water Pollution Control Amendments of 1972, which expanded and strengthened the earlier legislation.