# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CT-00614-SCT

*JERRY BEALE, JR. a/k/a JERRY BEALE a/k/a*
*JERRY LEE BEALE a/k/a JERRY LEE BEALE*
*JUNIOR a/k/a JERRY LEE BEALE, JR.*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2020 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| TRIAL COURT ATTORNEYS: | STACEY ALAN SPRIGGS |
| | JESSICA MASSEY CARR |
| | MICHAEL HADEN LAWYER |
| | ROBERT R. MORRIS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: META S. COPELAND |
| | ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | ROBERT R. MORRIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/18/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Jerry Beale was convicted of two counts of attempted murder and was sentenced to

serve thirty-five years in the custody of the Mississippi Department of Corrections. The Court

of Appeals found no reversible error.[1] We granted certiorari because one of the issues raised by Beale had never been addressed by this Court. We affirm the judgments of the Court of Appeals and the DeSoto County Circuit Court.

## FACTS AND PROCEDURAL HISTORY[2]

In the late hours of the night on June 8, 2018, Piccola Thomas was awoken in her apartment by a fight that had broken out between her sister and her sister's boyfriend, Jerry Beale. Piccola told the couple to leave her apartment. Piccola's sister left, but Beale refused to leave. Piccola threatened to call the police, but Beale still would not leave her apartment. Instead, Beale responded and told her to go ahead and call the police because he was going to "light this b*tch up."

Piccola eventually called 911. She told the 911 operator that Beale was armed, was making threats, and had been drinking, and she wanted him to leave the apartment. The 911 operator subsequently sent this information to a police dispatcher, who proceeded to put a call out to the police. The first police officer to arrive on the scene was Colin Hall, and Officers Mary Fite and Brantson Vuncannon arrived shortly afterward.

Officer Hall testified that based on what he learned from police dispatch, he was called to the scene because a male inside the apartment was "belligerent" and "making threats." Piccola told Officer Hall that Beale had

---

[1] ***Beale v. State***, No. 2020-KA-00614-COA, 2022 WL 1221382, at *8 (Miss. Ct. App. Apr. 26, 2022). The Court of Appeals majority opinion was authored by Judge McCarty and was joined in full by Chief Judge Barnes, Presiding Judge Carlton, and Judges Greenlee, Lawrence, and Smith. Judge Emfinger concurred in part and in the result without separate written opinion. ***Id.*** Presiding Judge Wilson concurred in result only without separate written opinion. ***Id.*** Judge McDonald concurred in part and dissented in part without separate written opinion. ***Id.*** Judge Westbrooks dissented and was joined in part by Judge McDonald. ***Id.***

[2] The facts and procedural history are taken verbatim from the Court of Appeals opinion.

been drinking all night and appeared to be "heavily intoxicated," was armed, and had said that if the police were called that he was going to kill them.

Once inside the apartment, Officer Hall testified that they heard Beale repeatedly screaming, "I don't talk to no f'ing police." Officer Hall stated that two or three times they announced their presence inside the apartment, making it known that the police were coming inside. The three officers started going up the stairs and saw Beale at the top. Beale was shirtless, drinking a beer, and pacing back and forth with a pistol jammed in his waistband. After the officers saw the pistol, they drew their service weapons. According to Officer Hall, Beale was completely ignoring the officers and their commands.

Officer Hall testified that he began to give Beale commands to put his hands on his head; Beale refused. The three officers holstered their guns and readied their tasers, still attempting to get Beale to comply. In an attempt to regain control of the situation, Officer Hall fired his taser at Beale. Officer Fite also aimed and fired her taser at Beale. Officer Hall's taser hit Beale but did not incapacitate him. In response, Beale immediately drew his gun and fired it at the officers.

Officer Hall recounted how he saw the gun pointed directly at him and only remembered hearing the "bang, bang, bang" as Beale fired. Officer Fite would later testify she saw Beale's pistol pointed at her face as well.

When Beale shot at the officers, all three of them immediately retreated. While Officer Hall took cover in a bedroom, he called police dispatch and reported the shooting and requested backup. He also requested an ambulance because he had seen blood on the floor and was concerned that he had been shot. Meanwhile, Officers Fite and Vuncannon retreated downstairs. Beale shut himself inside the bathroom.

When backup arrived, authorities continued to give Beale commands to come out of the bathroom and surrender. Beale ignored them at first but eventually opened the bathroom door and threw his loaded pistol down the stairs. Still belligerent, Beale refused to follow . . . orders to get on his knees and put his hands on his head. In the end, after being tased a second time, eight officers were eventually able to get Beale into custody.

Beale was indicted for three counts of attempted murder of three police officers. During trial, a crime scene technician explained he recovered three

.40-caliber shell casings in the upstairs apartment area. An officer also recovered Beale's .40-caliber gun from where he had thrown it down the stairs. Bryan Rosenberg described for the jury the bullet holes that could be seen in photographs that depicted Beale had fired shots at the officers. All three officers testified that they believed Beale was shooting at them in order to kill them.

The jury convicted Beale of the attempted murder of Officers Hall and Fite and found Beale not guilty of the attempted murder of Officer Vuncannon. The trial court sentenced Beale to serve thirty-five years in the custody of the Mississippi Department of Corrections with five years of post-release supervision. Aggrieved, Beale now appeals.

*Beale*, 2022 WL 1221382, at *1-2.

¶2.    On appeal, Beale raised three issues before the Court of Appeals: 1) whether his indictment correctly stated the elements of attempted murder; 2) whether two jury instructions constituted a constructive amendment to the indictment; and 3) whether the trial court erred by allowing certain testimony from Officer Hall. The Court of Appeals found that Beale's indictment correctly stated the necessary elements of attempted murder; the jury instructions did not constitute a constructive amendment to the indictment; and the trial court did not abuse its discretion by allowing the officer to testify about what he was told in the course of his investigation. *Id.* at *7.

¶3.    In his petition for writ of certiorari, Beale argued that his indictment was defective because it lacked the essential element of an overt act. Beale further argued that the jury instructions constructively amended the indictment. We granted Beale's petition for writ of certiorari.

**ANALYSIS**

4

**I.     Beale's indictment correctly stated the necessary elements of attempted murder.**

¶4.     In 2013, the Legislature amended the attempt statute by adding the language found in subsection (2), which only addresses attempted murder. *See* Miss. Code Ann. § 97-1-7 (Rev. 2020).[3] The Legislature specifically set apart attempted murder from all other attempt crimes by removing the overt act requirement as to attempted murder. Prior to the 2013 amendment, the statute read, "[e]very person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same . . . ." Miss. Code Ann. § 97-1-7 (Rev. 2006). In subsection (2), which was added by the 2013 amendment, the Legislature definitively

---

[3] The amended attempt statute, in its entirety, reads:

(1) Every person who shall design and endeavor to *commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof*, shall, where no other specific provision is made by law for the punishment of the attempt, be punished by imprisonment and fine for a period and for an amount not greater than is prescribed for the actual commission of the offense so attempted.

(2) Every person who shall design and endeavor to **commit an act which, if accomplished, would constitute an offense of murder under Section 97-3-19**, but shall fail therein, or shall be prevented from committing the same, shall be guilty of attempted murder and, upon conviction, shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict after a separate sentencing proceeding. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than twenty (20) years in the custody of the Department of Corrections.

Miss. Code Ann. § 97-1-7 (Rev. 2020) (emphasis added).

5

wrote that only "an act" be committed in furtherance of the murder. Miss. Code Ann. § 97-1-7 (Rev. 2020). Beale unconvincingly argues that the amended statute should be interpreted no differently than its predecessor. He claims his indictment was defective because it did not specify an overt act toward the commission of attempted murder.

¶5.     As Judge McCarty correctly held in the Court of Appeals majority opinion, prior to 2013, all attempt crimes were treated the same under the general statute, and that general statute required proof of an "overt act." Miss. Code Ann. § 97-1-7 (Rev. 2006). A plain reading of the amended statute, however, leaves no question that the Legislature chose to treat the crime of attempted murder differently from all other attempt crimes, by removing from the text the "overt act" language in Section 97-1-7(2), which singularly addresses attempted murder.

¶6.     "The most fundamental rule of statutory construction is the plain meaning rule, which provides that if a statute is not ambiguous, then this Court must apply the statute according to its terms." *State ex rel. Hood v. Madison Cnty. ex rel. Madison Cnty. Bd. of Supervisors*, 873 So. 2d 85, 90 (Miss. 2004) (citing *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992)). The Legislature's amended statute plainly reads that an overt act is not necessary to prove attempted murder.

¶7.     Beale was indicted for three counts of attempted murder. His indictment tracked the language of Section 97-1-7(2), stating that Beale "did willfully, unlawfully, and feloniously, attempt to kill Officer [name], a human being . . . [and] acted with the deliberate design to

effect the death of Officer [name], but failed to successfully complete the act, in direct violation of Section 97-3-19(1)(a) . . . ." Because the Legislature did not include a requirement to set forth a direct, overt act in an indictment under the attempted murder statute, we hold that Beale's indictment for attempted murder did not require the description of an overt act and was sufficient. Thus, we find that there is no defect in Beale's indictment, and his convictions and sentences are affirmed.

## II. Jury instructions 8 and 9 did not constitute a constructive amendment to the indictment.

¶8.    Beale next contends that, because jury instructions 8 and 9 contained descriptions of the overt act, the instructions constituted a constructive amendment to his indictment. The Court of Appeals found that because Beale had failed to object to instructions 8 and 9 at trial, he was procedurally barred from challenging the instructions on appeal. *Beale*, 2022 WL 1221382, at *5. The Court of Appeals also determined that the instructions did not constitute a constructive amendment. *Id.* We agree with the Court of Appeals.

¶9.    "Jury instructions are generally within the discretion of the trial court and the settled standard of review is abuse of discretion." *Moody v. State*, 202 So. 3d 1235, 1236-37 (Miss. 2016) (internal quotation marks omitted) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (Miss. 2012)). This Court previously has held that

> A constructive amendment of an indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. A constructive amendment of an indictment is reversible *per se*. Reversal is automatic because the defendant may have been convicted on a ground not charged in the indictment.

7

*Graham v. State*, 185 So. 3d 992, 1001 (Miss. 2016) (citations omitted) (quoting *Bishop v. State*, 812 So. 2d 934, 941 (Miss. 2002)). "The central question the Court must ask when reviewing an alleged constructive amendment is 'whether the variance is such as to substantially alter the elements of proof necessary for a conviction.'" *Id.* (quoting *Bell v. State*, 725 So. 2d 836, 855 (Miss. 1998)).

¶10. Jury instructions 8 and 9 provided, in relevant part, that

> In Count One if you find from the evidence in this case, beyond a reasonable doubt, that:
>
> > 1.) On or about June 8, 2018, [the named officer] was a living person; and
> >
> > 2.) On or about June 8, 2018, JERRY LEE BEALE, without authority of law, did shoot at and attempt to kill [the named officer], in DeSoto County, Mississippi; and
> >
> > 3.) JERRY LEE BEALE acted with deliberate design to effect the death of [the named officer]; and
> >
> > 4.) JERRY LEE BEALE failed to actually kill [the named officer] in that his shots missed [the named officer] and therefore did not meet the elements required of murder,
>
> then you shall find Defendant guilty of Attempted First Degree Murder.

¶11. Beale failed to object to the jury instructions. "This Court has held on numerous occasions that an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal." *Neal v. State*, 15 So. 3d 388, 397 (Miss. 2009) (internal quotation marks omitted) (quoting *Smith v. State*, 835 So. 2d 927, 939 (Miss. 2002)).

¶12. Moreover, we have held:

"As long as the change does not 'materially alter facts which are the essence of the offense on the [face] of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood' in a way that would prejudice the defendant's case, then the amendment is permissible."

*Graham*, 185 So. 3d at 1001-02 (quoting *Miller v. State*, 740 So. 2d 858, 862 (Miss. 1999)).

We find that the jury instructions did not materially alter the face of the indictment in a way that would prejudice Beale's case. Therefore, this issue has no merit.

## CONCLUSION

¶13. We find that Beale's indictment correctly stated the necessary elements of attempted murder. We further find that jury instructions 8 and 9 did not constructively amend the indictment. For these reasons, we affirm the judgments of the Court of Appeals and the Desoto County Circuit Court.

¶14. **AFFIRMED.**

**MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND COLEMAN, J.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶15. Because I would find that an overt act remains an essential element of attempted murder and that Beale's indictment was defective for failure to specify the overt act taken in furtherance of attempted murder, I dissent.

¶16. "[W]hether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or de novo review . . . ." *Brady v. State*, 337 So. 3d 218,

9

223 (Miss. 2022) (alterations in original) (internal quotation marks omitted) (quoting *Forkner v. State*, 277 So. 3d 946, 948-48 (Miss. 2019)).

¶17. Under Mississippi Code Section 97-1-7(1), the general attempt statute, "[e]very person who shall design and endeavor to commit an offense, and shall do any *overt act* toward the commission thereof, but shall fail therein . . . shall . . . be punished . . . ." Miss. Code Ann. § 97-1-7(1) (Rev. 2020) (emphasis added). Prior to 2013, attempted murder fell under the general attempt statute. *See* Miss. Code Ann. § 97-1-7 (Rev. 2006). As the Court of Appeals stated, however, "[i]n 2013, the Legislature significantly expanded the [attempt] statute by the addition of a new subsection: § 97-1-7(2)." **Beale v. State**, No. 2020-KA-00614-COA, 2022 WL 1221382, at *3 (Miss. Ct. App. 2022). Mississippi Code Section 97-1-7(2) provides that "[e]very person who shall design and endeavor to commit *an act* which, if accomplished, would constitute an offense of murder under Section 97-3-19, but shall fail therein, . . . shall be guilty of attempted murder . . . ." Miss. Code Ann. § 97-1-7(2) (Rev. 2020) (emphasis added). Beale was indicted for attempted murder under Section 97-1-7(2).

¶18. Historically, "[a]n indictment for an attempt crime must charge '(1) the intent to commit the offense, and (2) an overt act toward its commission.'" **Brady**, 337 So. 3d at 224 (quoting **Maxie v. State**, 330 So. 2d 277, 277 (Miss. 1976)). The Court of Appeals, however, found probative that Section 97-1-7(2) did not contain the word *overt*. **Beale**, 2022 WL 1221382, at *4. Therefore, it concluded that the language of the statute was plain and unambiguous and that the statute did not include the general requirement that an indictment

10

allege "an overt act." *Id.* The dissent argued, however, that "[w]hile subsection 2 may lack the word 'overt,' the law is clear—a description of the act is required." *Id.* at *11 (Westbrooks, J., dissenting). I agree. The Legislature's omission of the word *overt* in subsection 2 does not change that a direct and ineffectual act is an essential element of attempted murder. Accordingly, I would find that a description of the overt act is required in the indictment.

¶19. This Court has long held that "[a]n attempt to commit a crime consists of three elements: (1) an intent to commit a particular crime; (2) a *direct [overt] act* done toward its commission; and (3) the failure to consummate its commission." ***Green v. State***, 269 So. 3d 75, 82 (Miss. 2018) (second alteration in original) (emphasis added) (internal quotation marks omitted) (quoting ***Brooks v. State***, 18 So. 3d 833, 841 (Miss. 2009)). The direct act element in attempt crimes, including in attempted murder, is essential. This is because "[t]he mere intention to commit a crime is not punishable; 'the intention must therefore be coupled with an overt act.'" *Id.* (internal quotation marks omitted) (quoting ***Croft v. State***, 992 So. 2d 1151, 1159-60 (Miss. 2008)). This Court in ***Jackson v. State***, wrote:

> It must be remembered that an attempt to commit the crime of burglary (or an attempt to commit any other crime for that matter) is just as much a crime as the completed act is a crime. Where a person with the intent to commit a crime performs some overt act toward the commission of the intended crime, he is guilty of the crime of "attempt to commit the crime," provided the act is more than mere preparation.

***Jackson v. State***, 254 So. 2d 876, 878 (Miss. 1971). This Court has defined what constitutes an overt act, stating:

11

[A]n attempt is a direct movement toward the commission of the crime after the preparations have been made; the defendant's act must be a direct, unequivocal act toward the commission of the intended crime; that his acts must have progressed to the extent of giving him power to commit the offense and nothing but an interruption prevented the commission of the offense; that the defendant's act must reach far enough toward the accomplishment of his intention to commit the offense to amount to a commencement of the consummation or to be a step in the direct movement toward its commission; and that some appreciable fragment of the crime must be committed so that the crime would be completed if the defendant were not interrupted.

*Ishee v. State*, 799 So. 2d 70, 73 (Miss. 2001) (alteration in original) (quoting ***Bucklew v. State***, 206 So. 2d 200, 202-03 (Miss. 1968)).

¶20. Implicit in the attempted murder subsection is the requirement of an act that is more than mere preparation, i.e., a direct (or overt) act. Thus, a direct act is a necessary element of attempted murder. Beale's indictment stated that he had "acted with the deliberate design to effect the death of [the named officer], but failed to successfully complete the act . . . ." The prevailing purpose of an indictment is to provide notice to the defendant. The Mississippi Constitution mandates that "[i]n all criminal prosecutions the accused shall have a right to . . . demand the nature and cause of the accusation . . . ." Miss. Const. art. 3, § 26. Thus, I would find that, without the description of the overt act, the indictment gave insufficient notice of the nature and cause of the accusation.

¶21. Mississippi Rule of Criminal Procedure 14.1(a)(1) states that "[t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." MRCrP 14.1(a)(1).

12

The United States Supreme Court has stated that

> [n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

*Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948) (citing *In re Oliver*, 333 U.S. 257, 68 S. Ct. 499, 92 L. Ed. 682 (1948)).

¶22. As this Court has noted, "simply tracking the language of a statute will not always be sufficient." *Quang Thanh Tran v. State*, 962 So. 2d 1237, 1242 (Miss. 2007). Further,

> "[i]t is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.'"

*Russell v. United States*, 369 U.S. 749, 765, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962) (quoting *United States v. Cruikshank*, 92 U.S. 542, 558, 23 L. Ed. 588 (1875)). "[T]he language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Quang Thanh Tran*, 962 So. 2d at 1241-42 (internal quotation marks omitted) (quoting *United States v. Hess*, 124 U.S. 483, 487, 8 S. Ct. 571, 31 L. Ed. 516 (1888)). The indictment must "provide enough detail so that the defendant may plead double jeopardy in a future prosecution based on the same set of events." *Id.* at 1243 (citing *United States v. Green*, 964 F.2d 365, 372 (5th Cir. 1992)).

¶23. I mirror Judge Westbrooks's concerns that an adoption of the Court of Appeals' decision "would always leave the door open for the State to change its proof later on down the road." **Beale**, 2022 WL 1221382, at *11. An indictment for attempted murder must contain a description of the act that constituted the offense charged in order for the defendant to prepare an adequate defense. Again, "[n]o principle of procedural due process is more clearly established than that notice of the specific charge . . . [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." **Cole**, 333 U.S. at 201 (citing **In re Oliver**, 333 U.S. at 273). The **Russell** Court wrote that

> The vice which inheres in the failure of an indictment . . . to identify [a description of an essential element] . . . is thus the violation of the basic principle "that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him . . . ." A cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined. It enables his conviction to rest on one point and the affirmance of the conviction to rest on another. It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture.

**Russell**, 369 U.S. at 766 (citations omitted). This Court has continually recognized that an indictment for attempt must contain a description of the overt act taken toward the offense charged. **Brady**, 337 So. 3d at 224. The attempted murder statute includes that requirement. Because Beale's indictment fails to include a description of the overt act, I would find that it is defective.

¶24. Accordingly, Beale's conviction must be reversed. "The government may not prosecute a criminal defendant 'for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . .'" **Quang Thanh Tran**, 962 So. 2d at 1241

14

(quoting U.S. Const. amend V). Further, "[t]he purpose of an indictment is to satisfy the constitutional requirement that a 'defendant be informed of the nature and cause of the accusation . . . .'" *Id.* (second alteration in original) (quoting U.S. Const. amend. VI; Miss. Const. art. 3, § 26). Thus, "[t]his Court has made it 'clear that the ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense.'" *Byrom v. State*, 863 So. 2d 836, 867 (Miss. 2003) (quoting *Medina v. State*, 688 So. 2d 727, 730 (Miss. 1996)).

¶25.    Beale was tried on a defective indictment. Its deficiencies are substantive, not procedural. The reason for an indictment's providing notice to a defendant is to give the defendant a "fair and adequate opportunity" to prepare and defend him or herself against the charges asserted by the State. *Quang Thanh Tran*, 962 So. 2d at 1241. Beale did not have proper notice or a fair opportunity to prepare and defend himself. As a result, I would find that his defense was prejudiced. Therefore, I would reverse and render Beale's convictions.

**KITCHENS, P.J., AND COLEMAN, J., JOIN THIS OPINION**.