# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01458-SCT

*TAGHI "TED" BOROUJERDI*

*v.*

*CITY OF STARKVILLE*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/07/2012 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| TRIAL COURT ATTORNEYS: | ANDREW WALLACE STUART, II |
| | M. JAY NICHOLS |
| | MARC D. AMOS |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ADAM GRANT PINKARD |
| ATTORNEY FOR APPELLEE: | MARC DARREN AMOS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 02/12/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Ted Boroujerdi's home and yard were flooded with sewage that backed onto his property in February 2009. Boroujerdi filed suit against the City of Starkville ("the City"), alleging that he had suffered property damage and personal injuries as a result of the City's negligent maintenance of its sewage system. The trial court granted summary judgment for the City, finding that the maintenance of the sewage system is a discretionary function and that the City is immune from suit pursuant to Mississippi Code Section 11-46-9(1)(d) and

this Court's plurality opinion in *Fortenberry v. City of Jackson*, 71 So. 3d 1196 (Miss. 2011).

¶2.     Boroujerdi appealed, arguing that the maintenance of the sewage system is ministerial and the City is not immune from suit, that summary judgment was therefore inappropriate, and that this Court should overrule its plurality opinion in *Fortenberry*. We reverse the trial court's grant of summary judgment in favor of the City. Recently, in *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014), this Court overhauled its analysis of discretionary function immunity. Accordingly, we now must revisit our treatment of sewage-system maintenance as a discretionary function. We hold that, while the overall function of maintaining a sewage system may be discretionary, certain narrower functions and duties involved with sewage maintenance may be rendered ministerial through applicable statutes, regulations, and/or ordinances. Accordingly, we remand this case to the Circuit Court of Oktibbeha County for the plaintiff to address whether his premises flooded as a result of the City's fulfilling or its failing to fulfill a ministerial function or duty.

## FACTS AND PROCEDURAL HISTORY

¶3.     On February 27, 2009, the toilets, sinks, and tubs of Boroujerdi's home in Starkville overflowed from sewage backup after a heavy downpour of rain. Boroujerdi called the Starkville water and sewage department to fix the problem. He walked outside to meet with the workers, and as he was walking back to his house to show them the damage, he slipped and fell in the raw sewage that had covered his driveway. Boroujerdi alleges that he suffered serious injuries as a result of the fall. Boroujerdi brought suit against the City of Starkville, averring that its reckless and negligent failure properly to maintain the sewer system had

2

proximately caused his physical injuries and damage to his property. He alleged that similar problems had occurred on his property previously, and that the City "had been put on notice of the problems but recklessly refused to make the necessary repairs." Boroujerdi sought compensation for medical bills and pain and suffering in the amount of $500,000.

¶4.     The City moved for summary judgment, arguing that maintaining its sewage system is a discretionary function under Mississippi Code Section 21-27-189(b)[1] and the City was therefore immune from suit pursuant to Mississippi Code Section 11-46-9(1)(d).[2] The City attached an affidavit from its mayor, Parker Wiseman, stating that, to his knowledge, the City had not violated any ordinance, state or federal regulation, or any waste-removal and treatment permit with respect to its sewage system. In response, Boroujerdi argued that "Starkville accepted the responsibility for repairing Plaintiff's sewage problems and thus owed Plaintiff a duty of reasonable care in their efforts." He did not cite any potential ordinance, state or federal regulation, or waste-removal or treatment permit, the violation of which may have caused his house and lot to be flooded with sewage.

¶5.     The trial court granted the City's motion for summary judgment, citing this Court's then-recent holding in *Fortenberry*, which specifically held that a municipality is immune

---

[1]"A municipality, . . . is authorized and empowered, *in the discretion* of its governmental authorities . . . [t]o construct, operate, and maintain sewerage systems, sewage treatment facilities, and sewage disposal systems in the manner and to the extent required by the metropolitan area plan." Miss. Code Ann. § 21-27-189(b) (Rev. 2007) (emphasis added).

[2]"A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity . . . ." Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

from suit for negligent maintenance of its sewage system under Section 11-46-9(1)(d) because maintaining such a system is a discretionary function of the municipality. *See Fortenberry*, 71 So. 3d at 1204. Boroujerdi appealed, asking this Court to overrule its holding in *Fortenberry* and hold instead that a municipality has a ministerial duty to maintain its own sewage system once it decides to construct one.

¶6.    This Court requested and received supplemental briefing from the parties to address our intervening decision regarding discretionary function immunity in *Little v. Mississippi Department of Transportation*, 129 So. 3d 132 (Miss. 2013), and what effect, if any, state and federal statutes and regulations related to the disposal of sewage may have upon our determination of whether sewage-system maintenance is a ministerial or discretionary function.

**STANDARD OF REVIEW**

¶7.    This Court conducts *de novo* review of a trial court's determination that a governmental entity is immune under the Mississippi Tort Claims Act (MTCA). *Fortenberry*, 71 So. 3d at 1199 (¶ 7) (citing *City of Jackson v. Harris*, 44 So. 3d 927, 931 (Miss. 2010)). Additionally, when reviewing a grant of summary judgment, this Court employs a *de novo* standard of review. *Anglado v. Leaf River Forest Prods.*, 716 So. 2d 543, 547 (¶ 13) (Miss. 1998). We must consider all of the evidence "in the light most favorable to the non-moving party." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995) (internal citations omitted). However, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," and cannot simply "rest upon the mere allegations or denials of his pleadings." M.R.C.P. 56(e).

ANALYSIS

¶8. The sole issue on appeal, as stated by Boroujerdi, is "whether a municipality that controls and operates a sewage system has a ministerial duty to repair and maintain the sewage system . . . or whether . . . the municipality has discretion . . . to repair and maintain the sewage system so as to provide the municipality with immunity from liability under Mississippi Code Section 11-46-9." Boroujerdi urges this Court to adopt the reasoning of Presiding Justice Randolph's dissent in *Fortenberry*, 71 So. 3d at 1204 (¶ 28), and overrule the Court's decision, which held that a municipality's duty to maintain its sewage system is a discretionary one, and thus is one that provides immunity from tort liability to the municipality under the MTCA.

¶9. The City argues that this issue was conclusively decided in *Fortenberry*, and that the facts in this case are even more compelling for a finding of immunity under the MTCA than those in that case. In *Fortenberry*, 71 So. 3d at 1201 (¶ 14), the plaintiffs relied in part on an ordinance which required all sewage pipes in the City of Jackson to be of a certain diameter. Here, "there was no city ordinance which positively imposed upon the City of Starkville the duty to operate and maintain a sewage system." The City included an affidavit of Starkville's mayor, Parker Wiseman, stating that "no city ordinance had been violated with respect to Starkville's operation of its sewage system. . . ." The affidavit further stated that, to the mayor's knowledge, "the City of Starkville has not violated any state or federal regulation or law or any of its waste-removal and treatment permits with respect to its operation of the sewage system, and no such violation has been alleged." The City argues

that this Court's holding in *Fortenberry* is directly applicable to this case, and that the trial court was therefore correct in holding that summary judgment for the City was appropriate.

### 1. *Fortenberry v. City of Jackson*

¶10. Since Boroujerdi asks this Court to overrule *Fortenberry*, a summary of that case will be instructive. The properties of two sets of plaintiffs were damaged when sewage backup flooded their homes due to heavy rain.[3] *Id.* at 1198 (¶ 3). The plaintiffs sued the City of Jackson (Jackson), and the trial court granted summary judgment because it found that Jackson's maintenance of its sewage system was a discretionary function and, therefore, the MTCA immunized the City from tort liability. *Id.* at 1198 (¶ 4). The Court of Appeals held that an ordinance that mandated the size of sewage pipes that could be installed in the municipality made the duty to maintain the sewage system ministerial rather than discretionary and reversed the grant of summary judgment. *Fortenberry v. City of Jackson*, 71 So. 3d 1211, 1217-18 (Miss. Ct. App. 2010). This Court granted certiorari and reversed the Court of Appeals, with a plurality of four justices holding that the ordinance mandating pipe diameters did not apply to the neighborhoods in which the plaintiffs lived, that the duty to maintain the sewage system was discretionary, and that Jackson was therefore immune under the MTCA. *Fortenberry*, 71 So. 3d at 1203-04.

¶11. In reaching its decision, the plurality relied on the application of the two-part public-policy function test. *Id.* at 1199-1202. Historically, this Court has used that test "to determine if governmental conduct is discretionary so as to afford the governmental entity immunity."

---

[3]The suits stemmed from separate incidents at two different domiciles, but the cases were consolidated because the Court considered the same question of law in each.

***Miss. Transp. Comm'n v. Montgomery***, 80 So. 3d 789, 795 (¶ 20) (Miss. 2012) (quotation omitted). Under the test, the Court first determines "whether the activity in question involved an element of choice or judgment[,]" and, if so, "whether that choice or judgment involved social, economic, or political-policy considerations."***Id.*** If the duty or activity which forms the basis of the suit "is not imposed by law and depends upon the judgment or choice of the government entity or its employee[,]" then the duty or activity is discretionary. ***Pratt v. Gulfport-Biloxi Reg'l Airport Auth.***, 97 So. 3d 68, 72 (¶ 9) (Miss. 2012) (citing ***Montgomery***, 80 So. 3d at 795).

¶12.    In ***Fortenberry***, the Court determined that the first prong of the two-part test was satisfied because the plain language of Section 21-27-189(b) permitted a municipality, in its discretion, to maintain a sewage system. ***Fortenberry***, 71 So. 3d at 1200 (¶ 10). The second prong was satisfied because "operating and maintaining sewage systems clearly implicate, specifically, both economic and social policy." ***Id.*** at 1202 (¶ 18). As both prongs were satisfied, the Court held that discretionary function immunity applied to sewage-system maintenance.

### 2.    Discretionary function immunity since ***Fortenberry***.

¶13.    This Court's treatment of discretionary function immunity pursuant to Section 11-46-9(d) has changed drastically since it decided ***Fortenberry***. That change began in ***Little***, 129 So. 3d at 132, in which we confronted the issue of whether a governmental entity enjoyed immunity for its exercise of discretionary *acts* done in the performance of a ministerial *function*. In that case, three motorists sued the Mississippi Department of Transportation (MDOT), alleging that it had negligently maintained a road across which a pine tree had

7

fallen. *Id.* at 134 (¶ 1). MDOT asserted immunity under the MTCA, claiming that road maintenance is a discretionary function. *Id.* at 134 (¶ 3). The circuit court and the Court of Appeals agreed. *Id.*

¶14. This Court reversed, holding that, while the acts involved in maintaining rights-of-way are discretionary, the *function* of maintaining the rights-of-way was ministerial, and therefore, under the facts presented in *Little*, MDOT was not immune from civil liability. There, the statute at issue, Section 65-1-65, affirmatively required that MDOT "shall . . . maintain all highways. . . ." *Id.* at 135 (¶ 6). Without relying upon the public-policy function test, the Court held that "[i]t is the *function* of a governmental entity—not the acts performed in order to achieve that function—to which immunity does or does not ascribe under the MTCA." *Id.* at 138 (¶ 10).

¶15. More recently, we decided *Brantley*, 152 So. 3d at 1106, which greatly changed the manner in which this Court analyzes discretionary function immunity. After analyzing the plain language of the discretionary function immunity statute, Section 11-46-9(d), and its clear directive that immunity attaches to *function* rather than *acts*, as stated in *Little*, this Court formally abolished the public-policy function test. *Id.* at 1112-13 (¶¶ 19-20). Instead, we held that determining the overarching discretionary function at issue is only the first step in the analysis. *Id.* at 1114 (¶ 26). "The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function." *Id.* at 1115 (¶ 26). We went on to hold that "a plaintiff may defeat sovereign immunity, even when a

8

governmental entity's act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority." *Id.* at 1115 (¶ 28).

¶16. The Court's task in *Brantley*, therefore, was to determine whether the alleged act of negligently unloading a patient from a city-owned ambulance fell under a discretionary function entitling the municipality to immunity. *Id.* at 1116 (¶ 33). The Court held that, initially, a city was imbued with the discretion to "own, maintain, and operate an ambulance service" pursuant to the clear statutory language of Mississippi Code Section 41-55-1. *Id.* However, our analysis did not end there. We held that, because much of the activity of a city-run ambulance service is subject to the ministerial regulations of the State Board of Health, once a city has decided to operate and maintain its own ambulance service, "it is subject to several ministerial statutes and regulations which remove the municipality's discretion from many functions and duties and render such functions and duties ministerial." *Id.* at 1116 (¶ 34). Ultimately, the Court remanded the case to the trial court for a determination of whether the plaintiff could point to a regulation, ordinance, or statute which would render the act of removing a person from an ambulance subject to a ministerial function or duty within the larger discretionary function of the city's having decided to establish a municipal ambulance service. *Id.* at 1118 (¶ 39).

¶17. Our abolition of the public-policy function test is at odds with our analysis of sewage-system maintenance in *Fortenberry*. As we no longer utilize the test which the Court employed to hold that sewage maintenance was a discretionary function in that case, we now

9

must analyze the issue in accord with our current standard for the determination of governmental discretionary function immunity.[4]

### 3. Sewage maintenance as a discretionary function

¶18. Sewage maintenance is rendered discretionary by statute.

> A municipality, as defined in Section 21-27-163, is authorized and empowered, *in the discretion of its governmental authorities*, to exercise the following powers and authority within the area and territories comprising the metropolitan area of which it is a part:
>
> . . .
>
> (b) To construct, operate *and maintain* sewage systems, sewage treatment facilities and sewage disposal systems in the manner and to the extent required by the metropolitan area plan.

Miss. Code Ann. § 21-27-189 (Rev. 2007) (emphasis added).

¶19. If the duty or activity which forms the basis of the suit "is not imposed by law and depends upon the judgment or choice of the government entity or its employee," then the duty or activity is discretionary. *Pratt*, 97 So. 3d at 72 (¶ 9) (quoting *Montgomery*, 80 So. 3d at 795). The duty to maintain a sewage system is not imposed by law upon municipalities. The language of Section 21-27-189 explicitly leaves it to the discretion of municipalities whether and how to maintain their sewage systems, if any. Accordingly, sewage maintenance, as a general function, is discretionary. This, in fact, is similar in principle to the statute[5] rendering a city ambulance service a discretionary function in *Brantley*. Our task

---

[4]As for the dissent's suggestion that we are ignoring *stare decisis*, our treatment of discretionary function immunity comports with the current law of Mississippi, as the mandate has issued in *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014).

[5]Miss. Code Ann. § 41-55-1 (Rev. 2013).

10

now, pursuant to our holding in **Brantley**, is to consider whether there are narrower functions or duties concomitant to the general discretionary function of sewage maintenance that have been rendered ministerial through statute, ordinance, or regulation.

¶20.   There are. Sewage systems must comply with the Federal Water Pollution Control Act (the "Act"), a statute which makes it unlawful to discharge raw sewage into the environment. The Act requires publicly owned sewage-treatment works to establish effluent limitations and to abide by those limitations. 33 U.S.C.A. § 1311 (2009). According to the Congressional Research Service,[6] "[u]nder this act, federal jurisdiction is broad, particularly regarding establishment of national standards or effluent limitations. . . . [T]he federal government sets the agenda and standards for pollution abatement, while states carry out day-to-day activities of implementation and enforcement." Claudia Copeland, *Clean Water Act: A Summary of the Law*, http://crs.ncseonline.org/nle/crsreports/10May/RL30030.pdf (last viewed February 11, 2014). The federal government sets the standards; and, although the states have some discretion with respect to how they will meet those standards, they have no choice but to comply. Accordingly, the function of maintaining a sewage system to maintain compliance with the Act is a ministerial function that is set within the larger discretionary function of general sewage creation and maintenance.

¶21.   Additionally, the Mississippi Department of Environmental Quality (MDEQ) regulates the permits required to operate wastewater-treatment facilities and wastewater

---

[6]"The Congressional Research Service (CRS) works exclusively for the United States Congress, providing policy and legal analysis to committees and Members of both the House and Senate, regardless of party affiliation." http://www.loc.gov/crsinfo (last viewed February 11, 2014).

11

polluters. *See generally* Miss. Admin. Code 11-6:1.1. Permits must be obtained before wastewater treatment is begun by anyone. Miss. Admin. Code 11-6:1.1.1(B)(1) ("Any person proposing a discharge of wastes to waters of the State . . . shall file an application in the case of [a] . . . permit."). To maintain a permit, and thus, the right to have a sewage system, "[t]he permittee shall at all times properly operate, *maintain*, and when necessary, promptly replace all facilities and systems of collection, treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit." Miss. Admin. Code 11-6:1.1.4(A)(18) (emphasis added). So, an operator of a sewage system must maintain that system in order to keep the permit which allows it to operate that system.

¶22.    These administrative, ministerial regulations apply in much the same way with regard to sewage maintenance as do the Department of Health regulations to city ambulance services referenced in ***Brantley***. The overarching discretionary function of sewage-system maintenance, therefore, shelters several smaller functions and duties which may be ministerial according to statute, regulation, or ordinance. Pursuant to ***Brantley***, in order to defeat sovereign immunity provided by the discretionary nature of sewage-system maintenance in this case, the plaintiff must prove that the act which caused his property to flood with sewage "furthered a more narrow function or duty . . . made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority." ***Brantley***, 152 So. 3d at 1115 (¶ 28).

¶23.    Clearly, although the legislature granted to municipalities the discretion to maintain their sewage systems initially, there remain many statutes and regulations which render

12

ministerial certain more narrow functions of sewage-system maintenance. Operators of sewage systems in Mississippi generally obtain permits from the Mississippi Department of Environmental Quality (MDEQ),[7] the raw sewage contained in the sewage system must meet water-quality effluent limitations,[8] and all of this must be done within the boundaries provided in the federal Clean Water Act.[9] Several functions and duties involved in sewage maintenance and operation are ministerial, and if a plaintiff can show that his or her injuries were caused by the government's act or failure to act in furtherance of one or more of such ministerial functions, that plaintiff can proceed with his or her claim.

### 4. Boroujerdi's Suit

¶24. In *Brantley*, the act which caused the injury—unloading a patient from an ambulance—was easy to identify. In this case, it is the City's alleged failure to act which Boroujerdi claims caused his damages. He alleges that the City acted recklessly and with gross negligence by "failing to make adequate, necessary repairs to the sewer system while having knowledge of the necessity of same." The City moved for summary judgment and attached an affidavit from its mayor stating that no ordinance required the city to maintain the sewage system, and that he knew of no ordinance, state or federal regulation, or permit requirement which had been violated in relation to Boroujerdi's flooded home and injuries. In response to the motion for summary judgment, Boroujerdi failed to identify any ordinance or regulation or permit requirement which would have rendered the City's inaction subject

---

[7]*See generally* Miss. Admin. Code 11-6:1.1.

[8]*See generally* Miss. Admin. Code 11-6:1.2.

[9]33 U.S.C.A. § 1311 (2009).

13

to a ministerial function. He simply reiterated that, once the City had decided to build a sewage system, the duty to maintain it became ministerial. He stated that the City's failure to use reasonable care to repair his sewage problems proximately caused his injuries.

¶25. Boroujerdi has failed to point to any statute, regulation, or ordinance which would render the City's alleged negligent inaction subject to a ministerial function. He had the opportunity to do so in response to Mayor Wiseman's affidavit stating that the City had not violated any statutes or regulations in relation to Boroujerdi's flooding. Instead, Boroujerdi chose simply to argue that the City's duty to maintain its sewage system was ministerial once it had decided to create a sewage system. Under our holding in *Brantley*, Boroujerdi's claim must fail unless he can prove that the City's negligence in failing to repair the sewage system involved a function or duty made ministerial by a statute, regulation, or other binding directive.

¶26. Boroujerdi has failed to do so, thus far. However, as our treatment of discretionary function immunity changed significantly in consequence of *Brantley*, we find that it would be patently unfair to affirm summary judgment in the City's favor without Boroujerdi's having an opportunity to attempt to conform his complaint and proof to this Court's current approach to discretionary function immunity. Sewage-system maintenance is presumptively discretionary and entitled to immunity. But on remand, if Boroujerdi can prove that the City's alleged inaction in repairing the sewage system was related to a more narrow function made ministerial by statute, ordinance, regulation, or other binding directive, then he may proceed with his claim. If not, the City is entitled to immunity under Section 11-46-9(d), as the overarching function of sewage maintenance is a discretionary one.

14

¶27.    Municipal sewage maintenance generally is a discretionary function. However, several narrower functions and duties associated with sewage maintenance are mandated by statute or regulation and thus are ministerial and removed from discretionary function immunity. If Boroujerdi can prove that the City was engaged in a ministerial function, as described in this decision, in relation to his flooding and damages, he may proceed with his claim. Accordingly, the grant of summary judgment in favor of the City of Starkville is reversed, and the case is remanded to the Circuit Court of Oktibbeha County for further proceedings consistent with this opinion.

¶28.    **REVERSED AND REMANDED.**

**DICKINSON, P.J., LAMAR, KING AND COLEMAN, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., CHANDLER AND PIERCE, JJ.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶29.    Because I would find that Starkville is not entitled to discretionary-function immunity in this case, I must respectfully dissent.

¶30.    As explained in my separate opinion in ***Brantley v. City of Horn Lake***,152 So. 3d 1106 (Miss. 2014), this Court has followed the analysis of the federal courts in analyzing discretionary-function immunity under the Mississippi Tort Claims Act ("MTCA") for the last fifteen years.   *See **Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256, 260 (Miss. 1999) (citing ***U.S. v. Gaubert***, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991), *abrogated on other grounds by **Strange ex rel. Strange v. Itawamba County Sch. Dist.***, 9 So. 3d 1187, 1192 (Miss. 2009)).   The reason for this decision is simple: the MTCA's

discretionary-function exception is identical to its counterpart in the Federal Tort Claims Act, and it is not only logical, but beneficial, to apply our statute in the same manner as the federal courts have done. *Compare* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012) *with* 28 U.S.C. 2680(a) (2006). The Legislature has declined to correct this Court's interpretation of the discretionary-function exception, even though Section 11-46-9 has been amended since our adoption of the public-policy function test in *Jones.* *See* 2007 Miss. Laws Ch. 582 § 21.

¶31. The majority's opinion today departs from this precedent without regard for the fundamental legal doctrine of *stare decisis*. The doctrine of *stare decisis* "proceeds from that first principle of justice, that, absent powerful countervailing considerations, like cases ought to be decided alike." *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 634 (Miss. 1991). "Our application of *stare decisis* is necessary, *inter alia*, so that trial courts can make correct decisions and lawyers can properly advise their clients." *United Servs. Auto. Ass'n v. Stewart*, 919 So. 2d 24, 30 (Miss. 2005).

> In *stare decisis* generally, we look for error, but, finding that, we look for more and we look largely in the area of public or widespread disadvantage. Ordinarily, we do not overrule erroneous precedent unless it is "pernicious," *Stone v. Reichman-Crosby Co.*, 43 So. 2d 184, 190 (Miss. 1949); "impractical," *Robinson v. State*, 434 So. 2d 206, 210 (Miss. 1983) (Hawkins, J., concurring); or is "mischievous in its effect, and resulting in detriment to the public." *Childress v. State*, 188 Miss. 573, 577, 195 So. 583, 584 (1940). We look for "evils attendant upon a continuation of the old rule." *Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 467 (Miss. 1983).

*Molpus*, 578 So. 2d at 635. Furthermore, even where this Court determines a prior interpretation of a statute to be incorrect, "we will nevertheless continue to apply the previous interpretation, pursuant to the doctrine of *stare decisis*, upon finding the Legislature amended or reenacted the statute without correcting the prior interpretation." *Caves v.*

16

*Yarbrough*, 991 So. 2d 142, 154 (Miss. 2008) (holding that *stare decisis* required adherence to a judicially created discovery rule under the MTCA, where the Legislature had reenacted the statute in question without countermanding this Court's prior interpretations).

¶32.    A thorough review of the majority opinion reveals no mention of the Legislature's reenactment of Section 11-46-9 eight years after this Court's holding in *Jones*, which serves as evidence of the Legislature's approval and incorporation of the public-policy function test into the statute. *See* *Caves*, 991 So. 2d at 154. The majority does not explain how our established rule for analyzing discretionary-function immunity is erroneous as an initial matter. And even assuming *arguendo* that our prior interpretation of the law has been incorrect, the majority fails to point out how our continued adherence to precedent is in any way impractical, pernicious, mischievous in effect, or detrimental to the public. On the contrary, I view our adoption of the public-policy function test as a well-reasoned decision that should not be abandoned simply because some members of this Court do not agree on its intricacies. Erasing fifteen years of precedent on this issue, on the other hand, is a careless measure that will likely "create chaos for the trial bench and bar, which have a right to expect consistency from this Court." *Stewart*, 919 So. 2d at 30. Ultimately, though, the majority is simply applying the first prong of the public-policy function test without saying so. To this extent, I agree that an analysis of the first prong of the public-policy function test is dispositive in this case. I would find that, under the statutes and regulations cited by the majority, the City of Starkville's maintenance of its sewage system fails this prong.

¶33.    Under the first prong of our public-policy function test, a duty is considered ministerial rather than discretionary if "its performance [is] required at a time and in a

17

manner or upon conditions which are specifically designated." *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1141 (Miss. 1999). This Court has never held that every governmental act related to sewage maintenance is discretionary, as the majority suggests. In *Fortenberry v. City of Jackson*, 71 So. 3d 1196, 1203 (Miss. 2011), this Court found that "[t]he plaintiffs alleged no law or regulation established by the MDEQ which sets forth a specific procedure for operating and maintaining sewage systems."[10] However, it is clear from the majority's own opinion that such laws and regulations do exist. The MDEQ regulations cited by the majority require all operators of sewage systems to properly operate and maintain their facilities at all times in compliance with their wastewater permits. *See* Miss. Admin. Code § 11-6:1.1.4(A)(18). *See also* 40 C.F.R. § 122.41(e). This Court has interpreted similar statutory language as imposing a ministerial duty of maintenance on a governmental entity. *See Little*, 129 So. 3d at 135 (interpreting Section 65-1-65 of the Mississippi Code, which provides, "It *shall* be the duty of the state highway commission to have the state highway department maintain all highways . . . in such a way as to afford convenient, comfortable, and economic use thereof by the public *at all times*," as imposing a ministerial duty). This regulatory language plainly requires sewage maintenance to be performed at a specific time – "at all times" – and in a specific manner – "[i]n a manner and to the extent required by the metropolitan area plan" and to "achieve compliance with the

---

[10] The majority implicitly overrules *Fortenberry* to the extent that it relied on this Court's previously well-established test for analyzing discretionary-function immunity. *See* Maj. Op. at ¶17. I simply would hold that *Fortenberry* cannot be read as a pronouncement that *all* acts of municipal sewage maintenance are discretionary, as such an interpretation would require the lower courts to ignore the very regulations cited by both myself and the majority when analyzing these types of cases.

18

conditions of the permit." Miss. Admin. Code § 11-6:1.1.4(A)(18); Miss. Code Ann. § 21-17-189(b) (Rev. 2007). Thus, sewage-system maintenance fails the first prong of the public-policy function test, as the above regulatory scheme removes any element or choice or judgment from the matter. *See **Berkovitz by Berkovitz v. U.S.***, 486 U.S. 531, 537, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988). The majority's disposal of the second prong of the public-policy test is unwarranted, because a discussion of that prong is unnecessary for the disposition of this case. Nevertheless, I stand firm in my belief that this Court should remain faithful to precedent, absent strong countervailing considerations.

¶34. For the foregoing reasons, I respectfully dissent.

**RANDOLPH, P.J., CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.**