# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-IA-00985-SCT

*JONES COUNTY SCHOOL DISTRICT AND
JONES COUNTY SCHOOL BOARD*

*v.*

*COVINGTON COUNTY SCHOOL DISTRICT,
COVINGTON COUNTY SCHOOL BOARD,
ARNETTA CROSBY, IN HER CAPACITY AS
SUPERINTENDENT OF EDUCATION OF THE
COVINGTON COUNTY SCHOOL DISTRICT, AND
THE SECRETARY OF STATE FOR THE STATE
OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/2019 |
| TRIAL JUDGE: | HON. GERALD MARION MARTIN |
| TRIAL COURT ATTORNEYS: | TERRY L. CAVES |
| | RISHER GRANTHAM CAVES |
| | WILLIAM A. WHITEHEAD, JR. |
| | RICHARD D. NORTON |
| | NANCY MORSE PARKES |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | TERRY L. CAVES |
| | RISHER GRANTHAM CAVES |
| ATTORNEYS FOR APPELLEES: | WILLIAM A. WHITEHEAD, JR. |
| | WILSON DOUGLAS MINOR |
| | RICHARD D. NORTON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | VACATED AND REMANDED - 10/13/2022 |
| MOTION FOR REHEARING FILED: | |


**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     This case is a dispute over sixteenth-section income from four townships shared by neighboring school districts.[1] Jones County School District (JCSD) alleges that Covington County School District (CCSD), the custodial district, failed to share sixteenth-section income as required by statute for a period of eighteen years or more. JCSD requested, among other things, an accounting going back to 1997. The chancellor ultimately ordered what JCSD calls a "partial" accounting, lacking some requested details and going back only to 2003, when the two districts began exchanging lists of educable students as required by statute. JCSD then petitioned this Court for permission to file an interlocutory appeal, which the Court granted. JCSD contends on appeal that certain statutes prescribing time periods relating to the distribution of sixteenth-section incomes are statutes of limitation, which the Mississippi Constitution prohibits from being enforced against political subdivisions of the State. This appeal also presents questions of statutory interpretation regarding how income from shared townships is to be managed.

**FACTS**

¶2.     Jones and Covington County School Districts neighbor one another, and there are four townships lying partially in both districts. The sixteenth-section lands of all four townships are within CCSD's jurisdiction and control, making it the custodial school district. Miss.

---

[1] "The public land survey system established during the founding of the nation called for surveying all lands in six-mile square blocks. Each six-mile-square block is called a township." *Township*, Public Lands Glossary, https://www.sos.ms.gov/public-lands/public-lands-glossary (last visited Oct. 10, 2022). "The Land Ordinance of 1785 established the practice of setting aside section 16 in each township for the maintenance of public schools." *Sixteenth Section Lands*, Public Lands Glossary, https://www.sos.ms.gov/public-lands/public-lands-glossary (last visited Oct. 10, 2022).

Code Ann. § 29-3-119(4) (Rev. 2020). Prior to December 2002, JCSD and CCSD did not exchange lists of educable children residing in the shared townships, as required by Mississippi Code Section 29-3-119 (Rev. 2020).[2] JCSD and its school board (collectively, JCSD) filed a complaint against CCSD and the secretary of state on December 2, 2016, alleging six causes of action. First, JCSD requested an accounting of the sixteenth-section funds received by CCSD. Second, it asked for a declaratory judgment concerning the parties' status and legal relations arising from the sixteenth-section revenues. The third cause of action was a complaint for money had and received. The fourth claim alleged that CCSD breached its fiduciary duties after the state delegated its duty as trustee to CCSD. The fifth cause of action was a request for a preliminary injunction directing CCSD to turn over all funds generated from the sixteenth section on a pro rata basis in accordance with Section 29-3-119 and restraining CCSD from spending the revenue that belonged to JCSD. Finally, JCSD maintained it complied with all conditions precedent and, as such, demanded prejudgment interest from the date the funds were received by CCSD and owed to JCSD.

¶3.     CCSD asserted a counterclaim seeking declaratory judgment regarding the application of Section 29-3-119, the statute controlling sixteenth-section fund allocation. Specifically, CCSD contended that Section 29-3-119(4) contained a twelve-month period governing the manner in which school districts with shared townships were to administer and share

_____

        [2] Section 29-3-119 mandates the allocation of funds among school districts. When a township having available funds is shared by two districts, the statute requires that annual lists of children residing in the townships and enrolled in the schools of each district be made and kept by the superintendents of each district. Miss. Code Ann. § 29-3-121 (Rev. 2020). These lists must then be filed with the superintendent of the custodial school district (in this case, CCSD) and preserved as a public record. *Id.*

sixteenth-section revenue, thus Section 29-3-119(4) precluded JCSD from receiving funds. JCSD filed a motion for status conference and to inspect documents on December 13, 2017. The chancery court continued the case pending an inspection by JCSD's expert of the books and records of CCSD regarding the sixteenth sections. JCSD filed a motion for accounting on September 18, 2018. On December 3, 2018, JCSD filed an amended complaint that added as defendants the Covington County School Board and the superintendent of education of CCSD.

¶4. On January 2, 2019, JCSD filed a second motion for an accounting and on February 8, 2019, it filed a motion for partial summary judgment. That same day, the superintendent of education for JCSD forwarded to the superintendent of education for CCSD backdated lists of educable children residing within the shared townships for school years 1997-1998 through 2001-2002. CCSD filed both a response and a cross-motion for partial summary judgment. The chancery court held a hearing on the second motion for accounting and on May 28, 2019, granted JCSD's motion in part, ordering that CCSD was to prepare and provide JCSD with information regarding all funds, their location, the interest being earned on the funds, and all revenues generated from the shared sixteenth-section townships from 2003 to date. The chancellor noted that he did not believe it was necessary to find "where each and every dollar of CCSD's expenditures have gone."

¶5. This Court granted JCSD permission to file the present interlocutory appeal.

**STANDARD OF REVIEW**

4

¶6.    "The standard of review employed by this Court for review of a chancellor's decision is abuse of discretion." *Kerr v. Kerr*, 323 So. 3d 462, 469 (Miss. 2021) (internal quotation marks omitted) (quoting *Alexis v. Black*, 283 So. 3d 1105, 1107 (Miss. 2019)). "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Alexis*, 283 So. 3d at 1107).

¶7.    But "[t]his Court reviews 'questions of law de novo.'" *HWCC-Tunica, Inc. v. Miss. Dep't of Revenue*, 296 So. 3d 668, 673 (Miss. 2020) (quoting *Campbell Props., Inc. v. Cook*, 258 So. 3d 273, 275 (Miss. 2018)). "Matters of statutory interpretation also are reviewed by this Court using a de novo standard." *Id.* (internal quotation marks omitted) (quoting *Chandler v. McKee*, 202 So. 3d 1269, 1271 (Miss. 2016)).

## DISCUSSION

### 1.    Enforceability of Statutes

¶8.    Under Mississippi Code Section 29-3-121,

> [i]t shall be the duty of the superintendent of each school district to make or cause to be made annual lists of the children enrolled in the schools of such district and who reside in such district, which lists shall be based upon the end of the first month enrollment required to be reported to the State Department of Education for the then current school year.

"The lists shall be made separately as to the townships in which such children reside" and "shall be filed with the superintendent of the custodial school district on or before December 31 of each year." *Id.* The lists are to "be used in making the division of the available funds

5

of each township during the ensuing calendar year, as provided by Section 29-3-119." *Id.*

¶9.     Central to this appeal are the following statutory provisions.  First, "[a]ny school district failing to timely provide the list to the superintendent of the custodial school district shall forfeit its right to such funds" unless the school boards of both districts execute "a written agreement providing for the distribution of such funds in a manner agreed upon." *Id.*  Section 29-3-123 further states that it is "unlawful" for any township funds to be paid over to school districts as provided in Sections 29-3-115 through -123 when two or more school districts or parts of school districts are in the township "until lists of the children residing in each district or part of district within such township who are enrolled in the schools thereof have been made as required under Section 29-3-121." Miss. Code Ann. § 29-3-123 (Rev. 2020).  "Such lists shall be made annually before any payment of the expendable sixteenth section revenues shall be made to school districts as provided in Sections 29-3-115 through 29-3-123." *Id.*  Any school board member or superintendent who orders payment of funds in violation of the provisions of this section "shall be liable upon his bond for the amount so paid." *Id.*

¶10.    "[S]chool districts are considered political subdivisions of the state." ***Jones Cnty. Sch. Dist. v. Dep't of Revenue***, 111 So. 3d 588, 599 (Miss. 2013) (citing ***Gressett ex rel. Gressett v. Newton Sep. Mun. Sch. Dist.***, 697 So. 2d 444, 446 (Miss. 1997)).  JCSD asserts that because it is a political subdivision under article 4, section 104, of the Mississippi Constitution, "[s]tatutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporation thereof." Miss. Const. art. 4, § 104.

6

¶11. The enforceability of these statutes vis-a-vis article 4, section 104, of the Mississippi Constitution was addressed in this Court's recent decision in *Wayne County School District v. Quitman School District*, in which this Court held:

> [T]he language of the statute stating that "Any school district failing to timely provide the list to the superintendent of the custodial school district shall forfeit its right to such funds" is not a statute of limitations that establishes a time limit for bringing a lawsuit. Rather, it is a condition precedent school districts must fulfill.

*Wayne Cnty. Sch. Dist. v. Quitman Sch. Dist.*, 346 So. 3d 853, 859 (Miss. 2022). Further

> The governing statutes discussed above place the burden on the noncustodial school district to provide student lists to the custodial school district, and Section 29-3-123 makes it *unlawful* for the custodial school district to pay over "until the lists . . . have been made." In other words, not only does the custodial school district not have a duty to hold or pay money for the noncustodial district absent the student list, the law forbids it. Because the one-year period delineated in Section 29-3-119(4) does not place a time limit on litigation but rather a time limit on when a noncustodial district may make a claim with a custodial district, it is not a statute of limitations.

*Id.* at 860.

¶12. We reaffirm that holding today. Sections 29-3-119(4) and -121 are constitutional exercises of the Legislature's authority to decide the method and procedure for allocating funds. They are not statutes of limitation and are not in conflict with the Mississippi Constitution.

### 2.    Remaining Need for an Accounting

¶13. As we have previously explained, CCSD did not pay to JCSD any sixteenth-section revenues between 1998 and 2015. JCSD, by its own admission, made no claim for unpaid revenues until 2016. Thus, following the Legislature's pronouncements governing the

7

method and procedure for the allocation of shared revenue as laid out in Section 29-3-119(4), most of the funds sought by JCSD were statutorily allocated to CCSD, and JCSD cannot now assert a claim for them.

¶14.     That being said, the question remains whether an accounting going back beyond 2015 may still required.  This issue essentially boils down to whether certain funds, so-called principal funds—incomes resulting from permanent injury to the land that the statute requires to be invested in perpetuity—are to be held by the custodial district and their interest incomes distributed between the districts annually, or whether the funds required to be deposited into the principal fund are to be divided on an annual basis.  In other words, the question is whether there is to be one principal fund for the township or one principal fund for each school district sharing the township.

¶15.     Mississippi Code Section 29-3-113 (Rev. 2020) provides in relevant part:

> The principal fund shall be a permanent township fund which shall consist of funds heretofore or hereafter derived from certain uses or for certain resources of school trust lands which shall be invested and, except as otherwise provided in this section, only the interest and income derived from such funds shall be expendable by the school district.
>
> The principal fund shall consist of:
>
> (a) Funds received for easements and rights-of-way pursuant to Section 29-3-91;
>
> (b) Funds received for sales of lieu land pursuant to Sections 29-3-15 through 29-3-25;
>
> (c) Funds received from any permanent damage to the school trust land;

8

(d) Funds received from the sale of nonrenewable resources, including, but not limited to, the sale of sand, gravel, dirt, clays and royalties received from the sale of mineral ores, coal, oil and gas;

(e) Funds received from the sale of buildings pursuant to Section 29-3-77;

(f) Funds received from the sale of timber; and

(g) Funds received pursuant to Section 29-3-23(2).

¶16. Central to this issue is the meaning of the words "available funds" used elsewhere in the code. The statute provides that the custodial school district is to distribute the "available funds" to the noncustodial school districts in the township on a pro-rata basis every year. Miss. Code Ann. § 29-3-119(4). According to JCSD, "available funds" include those funds required to be deposited in the principal fund; consequently, each school district sharing the township must maintain its own principal fund for the township. CCSD takes the opposite position: it contends that "available funds" are synonymous with "expendable funds" (used elsewhere in the statute) and that there should be a single principal fund for the township held by the custodial school district. Only the interest generated by the principal fund would be "available funds" to be distributed pro-rata every year.

¶17. Mississippi Code Sections 29-3-117 and -123 use the words "expendable sixteenth section revenues" and "expendable sixteenth section funds," respectively, in describing the requirements of Mississippi Code Sections 29-3-115 through -123, which includes Section 29-3-119. Mississippi Code Section 29-3-117 (Rev. 2020) states: "All expendable sixteenth section revenues to which a school district shall become entitled, as provided in Sections 29-

9

3-115 through 29-3-123 from annual rents, interest and other sources shall be paid into the maintenance or building fund of the school district entitled thereto on order of the board of education." And Section 29-3-123 states, in part, "[s]uch lists [of students] shall be made annually before any payment of the expendable sixteenth section revenues shall be made to school districts as provided in Sections 29-3-115 through 29-3-123."

¶18. To date, no published Mississippi appellate court decisions have addressed the meaning of "available funds" under Section 29-3-119. One attorney general opinion, however, found that "available" and "expendable" are synonymous. In July 1979, Robert J. Hoffman, from the department of audit, requested clarification regarding the attorney general's statement in an earlier opinion letter that "any distribution of funds derived from . . . management [of funds derived from sixteenth section lands] must be divided in accordance with Sections 29-3-119 and 29-3-127." Miss. Atty. Gen. Op., 1979 WL 41228, *Robert J. Hoffman*, at *1 (Aug. 13, 1979) (internal quotation mark omitted) (quoting Miss. Atty. Gen. Op., 1979 WL 40714, *Harry O. Hoffman*, at *4 (Mar. 6, 1979)). The attorney general's office responded: "We are of the opinion that these sections apply only to the expendable funds." *Id*. The opinion reads:

> We call your attention to Chapter 258, House Bill 42, Laws of 1954, which is the source for Section 29-3-119. The title reads "an act to provide the purposes for which sixteenth section interest funds may be expended; to provide the method of apportioning such funds to school districts entitled thereto; to prescribe the manner and method of handling and expending such funds; to repeal . . ."

> "The title indicates that this section would apply only to sixteenth section interest (expendable) funds and not the sixteenth section principal funds as defined in Section 29-3-113.

10

"We take the position that the principal fund, including cash, investments and notes receivable are as much a part of the corpus as is the land, and would come under the jurisdiction and control of the board of education as defined in Section 1 of Chapter 525, Laws of 1978."

*Hoffman*, 1979 WL 41228, at *1-2 (emphasis omitted). Specifically relevant to the matter at hand is the finding that:

Principal funds are substitutes, in a sense, for the sixteenth section land once available and are derived from a loss to the corpus that will not be returned. Expendable funds are those funds produced by the corpus but at no loss to the corpus itself.

Separate statutes govern the makeup and use of principal funds and expendable funds. One of the statutes governing expendable funds is Section 29-3-119, which originated in Chapter 258, Laws of 1954 as Section 2 of House Bill No. 42. The reference in Section 2 of that bill is to "such funds" and "available funds." Using statutory construction, these references refer to Section 1 of House Bill No. 42, which was the predecessor of Section 29-3-115, Use of Expendable Funds. The only conclusion can be that Section 2 was intended and meant by the legislature to rely on Section 1 of House Bill No. 42 for the definitions of terms such as "such funds" and "available funds." Section 1 deals with "expendable funds" and not principal funds. Thus, the provisions of Section 29-3-119 apply to sixteenth section expendable funds and not to sixteenth section principal funds as defined in Section 29-3-113.

It is therefore the opinion of this office that the principal fund, including cash, investments and notes receivable would come under the jurisdiction and control of the [custodial school district]. Any interest from such principal funds would be divided, as stated in the December 14, 1978 opinion to Harry O. Hoffman, Jr., pursuant to Section 29-3-119.

*Id.* at *2.

¶19. "The function of the Court is not to decide what a statute should provide, but to determine what it does provide." **Lawson v. Honeywell Int'l, Inc.**, 75 So. 3d 1024, 1027 (Miss. 2011). "The Court must not broaden or restrict a legislative act." **Id.** Instead, the "goal is to give effect to the intent of the Legislature," and "[t]o determine legislative intent,

11

the Court first looks to the language of the statute." *Id.*  Put another way, "[t]he starting point for interpreting a statute is the language of the statute itself." *Atkins v. Old River Supply, Inc.*, 150 So. 3d 976, 982 (Miss. Ct. App. 2014) (alterations in original) (internal quotation marks omitted) (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)). "First, we must determine if the statute is ambiguous." *Oktibbeha Cnty. Hosp. v. Miss. State Dep't of Health*, 956 So. 2d 207, 209 (Miss. 2007).  "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Lawson*, 75 So. 3d at 1027.

¶20.    Mississippi law further requires that "[a]ll words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning . . . ." *Lawson*, 75 So. 3d at 1028 (alterations in original) (internal quotation marks omitted) (quoting Miss. Code. Ann. § 1-3-65 ( Rev. 2005)).  "Where a popular word is used in a statute with no statutory definition, we follow the well-established rule that popular words in a statute must be accepted in their popular sense . . . ." *Lambert v. Ogden*, 423 So. 2d 1319, 1321 (Miss. 1982).  We "frequently look[] to dictionaries to ascertain the meaning of a word in its common or popular sense." *Lawson*, 75 So. 3d at 1028 (collecting authorities).

¶21.    Because Section 29-3-119 provides no definition for "available," its common meaning should be applied by the Court.  Black's Law Dictionary defines "available" in part as "useable; accessible; obtainable; present or ready for immediate use." *Available*, Black's Law Dictionary (6th ed. 1990).  Similarly, Webster's defined "available" as "[s]uch as one may avail one's self of; capable of being used for the accomplishment of a purpose; usable;

12

profitable; advantageous; convertible into a resource; as, an *available* measure; an *available* candidate." *Available*, Webster's Third New Int'l Dictionary (1913).

¶22.    Moreover, Section 29-3-113 refers to a singular principal fund—"[t]he principal fund." And Sections 29-3-117 and 29-3-123 use the words "expendable sixteenth section revenues" and "expendable sixteenth section funds," respectively, in describing the requirements of Sections 29-3-115 through -123, which includes Section 29-3-119. *See* Miss. Code Ann. §§ 29-3-117 ("[a]ll expendable sixteenth section revenues to which a school district shall become entitled, as provided in Sections 29-3-115 through -123) and -123 (such lists must be made annually "before any payment of the expendable sixteenth section revenues shall be made to school districts as provided in Sections 29-3-115 through 29-3-123"). In other words, Sections 29-3-117 and 29-3-123 effectively define the term "available funds" in Section 29-3-119 to mean "expendable funds."

¶23.    Using these definitions, we conclude that "available" can mean nothing other than "expendable" in the context of the statute. Because "available" cannot mean all funds derived from sixteenth-section lands, it must mean only those funds which are capable of being utilized, i.e., expendable funds.

¶24.    Furthermore, "[i]n construing statutes, the court looks to the entire legislation upon the subject, and determines the policy of the Legislature from a consideration of all the statutes together." **Hollandale Ice Co. v. Bd. of Supervisors Washington Cnty.**, 171 Miss. 515, 157 So. 689, 690 (1934). Specifically, "[u]nder the doctrine of *in pari materia*, where two statutes speak to the same or similar subject matter, '[the] [c]ourt must resolve the

13

ambiguity by applying the statute consistently with other statutes dealing with the same or similar subject matter.'" *Tellus Operating Grp., LLC v. Maxwell Energy, Inc.*, 156 So. 3d 255, 261 (Miss. 2015) (quoting *State ex rel. Hood v. Madison Cnty. ex rel. Bd. of Supervisors*, 873 So. 2d 85, 91 (Miss. 2004)). "Even when statutes are in apparent conflict, they should if possible be construed in harmony with each other to give effect to each." *Carl Ronnie Daricek Living Tr. v. Hancock Cnty. ex rel. Bd. of Supervisors*, 34 So. 3d 587, 599 (Miss. 2010) (internal quotation marks omitted) (quoting *Roberts v. Miss. Republican Party State Exec. Comm.*, 465 So. 2d 1050, 1052 (Miss. 1985)). In other words, "[s]tatutes that are *in pari materia* must be harmonized, if possible, because of the presumption that the legislature has intended to create a harmonious body of law." 82 C.J.S. *Statutes* § 458. "Such statutes must be construed together as though they constitute one law." *Id*. "The legislative intention must be ascertained, not solely from the literal meaning of the words of a statute but from a view of the whole system of which it is but a part." *Id*. Furthermore, "[i]t is a well known rule of statutory construction that every word, sentence, phrase, or clause in a statute must be given a meaning, if possible[.]" *Morgan v. State ex rel. Dist. Att'y*, 208 Miss. 185, 44 So. 2d 45, 49 (1950). If statutes are susceptible to more than one interpretation, they must be given that which will best effectuate their purposes rather than one which would defeat them. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012).

¶25.    Construing "available" funds to mean "expendable" funds is the only interpretation that effectuates the purpose of the statutory scheme and allows Section 29-3-113 (describing

14

the handling of the principal fund and interest and income derived from such fund) and Section 29-3-119 (describing payment of pro rata shares of available funds to the noncustodial school district) to work together harmoniously. "Principal funds are substitutes . . . for the sixteenth section land once available and are derived from a loss to the corpus that will not be returned[,]" and "[e]xpendable funds are those funds produced by the corpus but at no loss to the corpus itself." *Robert G. Hoffman*, 1979 WL 41228, at *2.

¶26.　The lists of educable children will vary year to year. To divide the royalties from the sale of nonrenewable resources permanently on the year of the injury to the land would defeat the purpose of the trust and would fail to accommodate future changes in student enrollments. It would also lead to an inequitable result in today's case, in which large sales of oil and gas occurred in years in which no lists of students were exchanged or in which the noncustodial district failed to assert a timely claim for unpaid revenues as the statute requires. This interpretation would result in a permanent windfall to the custodial district. The statutory scheme is intended to preserve the sixteenth-section land and the funds derived from nonrenewable resources of that land in trust for future generations of educable children by keeping the corpus intact. That can only happen if funds derived from nonrenewable resources, "including, but not limited to, . . . royalties received from the sale of . . . oil and gas," are deposited into a single principal fund. Miss. Code Ann. § 29-3-113(d), -121; *Robert G. Hoffman*, 1979 WL 41228, at *2.

**CONCLUSION**

15

¶27. We conclude that the statute conditioning the annual payment of sixteenth-section funds on the exchanging of lists of educable children is a constitutional exercise of the Legislature's authority to decide the method and procedure for allocating funds. The statute giving the noncustodial district one year to contest the sufficiency of the payments (in those years in which lists of educable students were exchanged) is likewise not a statute of limitations.

¶28. Having settled those questions, we recognize that there may still be a need for an accounting, as the custodial district is required to pay a pro-rata share of the interest derived from the principal fund associated with each of the sixteenth-section lands to the noncustodial district on an annual basis. Maintenance of the principal fund is potentially subject to an action in equity for an accounting.

¶29. We recognize that an accounting is a cause of action in equity, and "[c]hancellors have long been vested with discretionary authority to decide matters of equity." *Flowers v. Est. of Flowers (In re Est. of Flowers)*, 264 So. 3d 775, 779 (Miss. 2019). "A court of equity is a court of conscience. The function of the chancellor is, upon equitable considerations, to winnow the wheat from the straw, and his decree will not be set aside on appeal unless . . . it is made to appear that it is not equitable but inequitable to let it stand." *Id.* (internal quotation marks omitted) (quoting *Durkin v. Lovknit Mfg. Co.*, 208 F. 2d 665, 667 (5th Cir. 1953)). The chancery court must have considerable discretion in fashioning that remedy to the equities of the case presented.

¶30. But we have settled numerous questions of first impression since the chancery court reached its decision. We therefore vacate the chancery court's accounting order and remand for that court to consider a new claim for accounting, if JCSD pursues one, in light of our decision.

¶31. **VACATED AND REMANDED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, P.JJ.**

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶32. I agree with the majority's decision to "vacate the chancery court's accounting order and remand for that court to consider a new claim for accounting, if [the Jones County School District] pursues one, in light of our decision." Maj. Op. ¶ 30. But I disagree with the majority's enforcement of Mississippi Code Sections 29-3-119(4) and -121 (Rev. 2020). Thus, I concur in part, and dissent in part.

¶33. The majority finds that "Sections 29-3-119(4) and -121 are constitutional exercises of the Legislature's authority to decide the method and procedure for allocating funds. They are not statutes of limitation and are not in conflict with the Mississippi Constitution." Maj. Op. ¶ 12. In support, the majority reaffirms this Court's recent holding in *Wayne County School District v. Quitman School District*, 346 So. 3d 853 (Miss. 2022). Maj. Op. ¶ 12.

¶34. For the reasons discussed in my dissenting opinion in *Wayne County School District*, I disagree with the majority's enforcement of Sections 29-3-119(4) and -121. *See Wayne Cnty. Sch. Dist.*, 346 So. 3d at 860-67 (Griffis, J., dissenting).

17

¶35.    I find the funds belong to and were intended for the benefit of the Jones County School District.  As a result, the Jones County School District is entitled to its proportionate share of all sixteenth-section funds received and administered by the Covington County School District.

**KITCHENS AND KING, P.JJ., JOIN THIS OPINION.**